HEINE *v.* THE LEVEE COMMISSIONERS.

1. There can be no jurisdiction in equity to enforce the payment of corporation bonds until the remedy at law has been exhausted.
2. Where the law has provided that a tax shall be levied to pay such bonds, a mandamus after judgment to compel the levy of the tax, in the nature of an execution or process to enforce the judgment, is the only remedy.
3. The fact that this remedy has been shown to be unavailing does not confer upon a court of equity the power to levy and collect taxes to pay the debt.
4. The power to levy and collect taxes is a legislative function in this country and does not belong to a court of equity, and can only be enforced by a court of law, through the officers authorized by the legislature to levy the tax, if a writ of mandamus is appropriate to that purpose.
5. Taxes are not liens unless declared so by the legislature under whose authority they are assessed. Still less can a lien be created by the mere duty to assess taxes, which has not been performed.

APPEAL from the Circuit Court for the District of Louisiana.

This was a suit in chancery brought by Heine and others, holders of bonds issued by what is called the board of levee

---

\* St. Peter Co. *v.* Bunker, 5 Minnesota, 199; *Evans v.* Folsom, Ib. 422; Bruggerman *v.* Herr, 7 Id 343; McCue *v.* Smith, 9 Id. 259.

commissioners of the levee district for the parishes of Carroll and Madison of the State of Louisiana. The board thus described was made a *quasi* corporation by the legislature of Louisiana, with authority to issue the bonds and provide for the payment of interest and principal by taxes levied upon the real and personal property within the district. The bill alleged a failure to levy these taxes and to pay the interest on any part of said bonds, that the persons duly appointed levee commissioners had pretended to resign their office for the purpose of evading this duty, and that the complainants had applied in vain to the judge of the District Court, who was by statute authorized to levy a tax on the alluvial lands to pay the bonds if the levee commissioners failed to do so. The prayer for relief was that the levee commissioners be required to assess and collect the tax necessary to pay the bonds and interest, and if, after reasonable time, they failed to do so, that the district judge be ordered to do the same; and for such other and further relief as the nature of the case required.

No judgment at law had been recovered on the bonds or any of them, nor any attempt to collect the money due by suit in the common-law court.

A demurrer to the bill was sustained in the Circuit Court, and the plaintiffs appealed from the decree of dismissal rendered on that demurrer.

*Mr. Thomas Allen Clarke, for the appellants,* contended:

That the commissioners having resigned could no longer in their corporate capacity be sued at law.

That there was a contract between the bondholders and the corporation not unlike an equitable mortgage; for that the contract was not simply an agreement to pay money but one to pay money out of a fund under the control of the commissioners; that it belonged specially to equity to enforce such a contract.

That it was part of the contract that the taxes should pay these bonds; that the holders had, therefore, a species of

lien on the lands on which the taxes were to be laid; this again being a matter specially of equitable cognizance.

That though the suit was by a bill in equity, yet that it might be taken (other grounds of relief failing) as a petition for mandamus.

That the case, in short, was a very complicated case, such as the law afforded no relief for; and that one was to be worked out through equitable mechanism unless a shocking injustice was to be tolerated.

*Messrs. S. R. Walker, W. Tunstall, and J. E. Leonard, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The question presented by the present case is not a new one in this court. It has been decided in numerous cases, founded on the refusal to pay corporation bonds, that the appropriate proceeding was to sue at law and by a judgment of the court establish the validity of the claim and the amount due, and by the return of an ordinary execution ascertain that no property of the corporation could be found liable to such execution and sufficient to satisfy the judgment. Then, if the corporation had authority to levy and collect taxes for the payment of that debt, a mandamus would issue to compel them to raise by taxation the amount necessary to satisfy the debt.[*]

Unless, then, there is some difficulty or obstruction in the way of this common-law remedy, chancery can have no jurisdiction.

It is said that by reason of the resignation of the levee commissioners no suit can be sustained against them so as to procure a judgment on which the mandamus may ultimately issue.

But the present suit is brought against these very men in

---

[*] Von Hoffman *v.* City of Quincy, 4 Wallace, 535; Supervisors *v.* United States, Ib. 435; Riggs *v.* Johnson County, 6 Id. 166; City of Galena *v.* Amy, 5 Id. 705, and many other cases in this court, and especially the case of Walkley *v.* City of Muscatine, 6 Id. 481.

their official character, and no difference can be seen in their capacity to be sued in a court of law and a court of equity. The same service of process is required in each. The same officers serve the process, and the jurisdiction of the court over the person is governed by precisely the same principles in each case. The court of chancery possesses no extraordinary powers to compel persons to submit to its jurisdiction and litigate before it, not possessed by a common-law court, when the latter is competent to give relief.

This proposition was directly in issue and distinctly settled in the case of *Rees* v. *City of Watertown*, at the present term.* In that case the plaintiff had obtained judgment, issued execution, which was returned *nulla bona*, and had then procured a writ of mandamus, ordering the aldermen of the city to levy the tax. The aldermen resigned before the writ could be served, with intent to evade its effect. After other aldermen were elected, a new writ was served on them, and they in turn resigned, after an order to show cause why they should not be punished for a contempt in failing to obey the writ of mandamus. Notwithstanding all this, we held that chancery had no jurisdiction, by a direct proceeding, to levy the tax or to seize the property of the citizens and sell it for the satisfaction of the judgment.

That case was much stronger than the one before us, and is unquestionably decisive of this. It is very clearly shown that the total failure of ordinary remedies does not confer upon the court of chancery an unlimited power to give relief. Such relief as is consistent with the general law of the land, and authorized by the principles and practices of the courts of equity, will, under such circumstances, be administered. But the hardship of the case, and the failure of the mode of procedure established by law, is not sufficient to justify a court of equity to depart from all precedent and assume an unregulated power of administering abstract justice at the expense of well-settled principles.

It is attempted in argument to support this exercise of

* *Supra*, p. 107.

authority by reference to some of the acknowledged grounds of equity jurisdiction.   One of these is the doctrine of specific performance of contracts.   But while equity has, in some cases, enforced in this manner a contract to deliver specific stocks, there is no such case here.   The plaintiffs have their bonds or stocks.   It is the money due on them which they want now.   And in this respect the case is one of compensation in damages for a failure to pay the money due on the bond.   All that plaintiffs can get is this money and interest, and that is precisely what a court of law would give them.   The almost universal rule on the subject of specific performance, as regards contracts other than those for real estate is, that where adequate compensation can be made by the damages recoverable at law, equity will not interfere.

It is said in argument that plaintiffs have a lien upon the taxable property of the district for the payment of these bonds, and that equity always enforces liens where no other mode of enforcing them exists.   Whether this be the true doctrine of a court of equity to the full extent here claimed we need not decide.   Nor need we decide whether taxes once lawfully levied are, until paid, a lien on the property against which they are assessed, though it is laid down in the very careful work of Judge Dillon, that taxes are not liens upon the property against which they are assessed, unless made so by the charter, or unless the corporation is authorized by the legislature to declare them to be liens.*   But here no taxes have been assessed except those which have been released by the bondholders accepting new bonds for the interest of the year so assessed.   And it is too clear for argument that taxes not assessed are no liens, and that the obligation to assess taxes is not a lien on the property on which they ought to be assessed.   This was one of the points urged and overruled in the case of *Rees* v. *Watertown*.

The court is asked if it should fail to find any principle peculiar to courts of equity on which the bill can be sustained, to treat it as a petition for the writ of mandamus.

---

* 2 Dillon on Corporations, 659.

This would ignore the well-established principle of the Federal courts that the line between the equitable and common-law jurisdiction must be maintained, and that a suit must be of the one character or the other, and be prosecuted by pleadings and processes belonging to each class of jurisdiction.

Mandamus is essentially and exclusively a common-law remedy and is unknown to the equity practice. But if this were otherwise it is the well-settled doctrine of this court that the Circuit Courts cannot use the writ of mandamus as an original and independent remedy, but are limited to its use as a process in the enforcement of rights when jurisdiction has been already acquired for other purposes. In fact, in the class of cases in which it is here sought it is a writ in execution of the judgment of the court already rendered, and can only be used because it is an appropriate process for that purpose.*

The Circuit Court cannot, therefore, issue the writ if the bill could be treated merely as a petition on the common-law side of the court, praying for that remedy.

There does not appear to be any authority founded on the recognized principles of a court of equity on which this bill can be sustained. If sustained at all it must be on the very broad ground that because the plaintiff finds himself unable to collect his debt by proceedings at law, it is the duty of a court of equity to devise some mode by which it can be done. It is, however, the experience of every day and of all men, that debts are created which are never paid, though the creditor has exhausted all the resources of the law. It is a misfortune which in the imperfection of human nature often admits of no redress. The holder of a corporation bond must in common with other men submit to this calamity, when the law affords no relief.

The power we are here asked to exercise is the very deli-

---

* McIntire v Wood, 7 Cranch, 504; McClung v. Silliman, 6 Wheaton, 601; Kendall v. United States, 12 Peters, 526; Riggs v. Johnson County, 6 Wallace, 197; The Secretary v. McGarrahan, 9 Id. 311; Bath County v. Amy, 13 Id. 244.

cate one of taxation. This power belongs in this country to the legislative sovereignty, State or National. In the case before us the National sovereignty has nothing to do with it. The power must be derived from the legislature of the State. So far as the present case is concerned, the State has delegated the power to the levee commissioners. If that body has ceased to exist, the remedy is in the legislature either to assess the tax by special statute or to vest the power in some other tribunal. It certainly is not vested, as in the exercise of an original jurisdiction, in any Federal court. It is unreasonable to suppose that the legislature would ever select a Federal court for that purpose. It is not only not one of the inherent powers of the court to levy and collect taxes, but it is an invasion by the judiciary of the Federal government of the legislative functions of the State government. It is a most extraordinary request, and a compliance with it would involve consequences no less out of the way of judicial procedure, the end of which no wisdom can foresee.

In the case of *Walkley* v. *City of Muscatine* and *Rees* v. *City of Watertown,* already cited, we have distinctly refused to enter upon this course, and we see no reason in the present case to depart from the well-considered judgment of the court in those cases, especially the latter.

Decree affirmed.

Dissenting, Mr. Justice CLIFFORD and Mr. Justice SWAYNE.

Mr. Justice BRADLEY did not sit.