STATE, WILLIAM M. JOHNSON, RECEIVER, &c., PROSECUTOR, v. JOHN C. VAN HORN, COLLECTOR, &c., OF THE TOWNSHIP OF NEW BARBADOES, &c.

1. The sale of lands for taxes, under the provisions of the act of 1879, (*Pamph. L.*, p. 340,) must be made before the expiration of the two years during which, by the provisions of said act, the lien for taxes is to continue.

2. The period of two years, during which the lien exists, commences to run at the time fixed by the collector of taxes in the notice required by section 10 of the act concerning taxes, (*Rev.*, p. 1141,) before which taxes are to be paid, not later than December 19th.

On *certiorari.*

The return to this writ shows an assessment of taxes made for the year 1879, against the lands of Agnes Berry, in the township of New Barbadoes, in the county of Bergen; a warrant, dated December 10th, 1881, issued by the township committee and directed to defendant as collector of taxes, requiring him to make said taxes, with interest and costs, by selling said lands; and an advertisement and notice by defendant of a proposed sale thereof, under said warrant, on January 17th, 1882.

The evidence and admissions in the case show that the lands in question were conveyed by Agnes Berry and her husband to the Bank of Bergen county, by deed dated November 10th, 1880; that said bank became insolvent, and that the prosecutor was duly appointed its receiver on November 12th, 1880.

Argued at November Term, 1882, before Justices SCUDDER and MAGIE.

*W. M. Johnson, in pro. pers.*

For the defendant, *S. R. Demarest.*

The opinion of the court was delivered by

MAGIE, J.    The first question presented for consideration in this case is whether the warrant and proceedings to sell prosecutor's lands for the taxes of 1879 are within the powers conferred by law on the officers of the township of New Barbadoes, in the county of Bergen.   The contention of the prosecutor is that the lien upon lands for taxes is limited to a fixed period, and that the sale is proposed to be made after the expiration of that period and therefore cannot lawfully be made.

This contention requires the examination and construction of the act entitled "A further act concerning taxes, making the same a first lien on real estate, and to authorize sales for the payment of the same," approved March 14th, 1879.   *Pamph. L., p.* 340.   By the terms of section 18 of this act, its provisions would seem to be limited in application to the townships of the state.   With respect to them, at least, the scheme it prescribes is complete.   It has thus superseded and taken the place of all previous legislation on the subject.   It contains a general repealer and a provision making it take effect immediately.   It was therefore by this act that the taxes assessed for the year 1879, in the township of New Barbadoes, became a lien on lands, and this act alone prescribed the mode in which the lien could be enforced.

It is conceded that taxes become liens on property solely from express legislation to that effect.   *Cooley on Taxation* 305; *Heine* v. *Levee Com'rs*, 19 *Wall.* 655.   The authority which may thus impose or refrain from imposing taxes as a lien, clearly may impose them without limit, or may restrict the lien either with respect to the property to be affected or the period during which it is to exist.

This act, by section 1, creates and imposes such a lien for taxes on the lands on account of which the taxes are assessed. It declares that such taxes shall " be, become and remain " a full and complete first and paramount lien on such lands, " for the space of two years from the time when such taxes so assessed were payable."   These words plainly fix a limit to the duration of the lien created by the act, and unless their mean-

ing is modified by other expressions in the act, that effect must be accorded to them.

I can find nothing in the act which in any degree tends to modify or restrain the meaning of this language. On the contrary, the rest of the act shows that the lien is to be extended and continued only by the proceedings prescribed for its enforcement.

The lien created by the act is to be enforced by a sale of the lands for a term of years. The purchaser is to receive a certificate entitling him to possession, and if the property is not reedemed by the expiration of a further fixed period, to a deed for the lands for the full term. It is thus that the lien is to be prolonged and eventually foreclosed. Since such a sale may be directed to be made whenever the tax has been in arrear for six months (section 2,) ample time is given to the township officials to perform their duty, and there is no reason, either from necessity or expediency, for extending the time prescribed. The inference seems clear that the sale, in order to prolong the lien, must be made before the lien expires.

The effect given by the act to the deed received by the purchaser renders it manifest that the lien must be continued by a sale before the two years have elapsed. By section 10, such a deed is declared to vest in the purchaser a title to the lands for the term, good against the owner and every person claiming under him, and against any estate in the lands, legal or equitable, and any "mortgages, alienations, devises, descents, liens and encumbrances of every kind and nature." If a sale may be made after the limit fixed for the lien, which will pass a complete title against every person and estate, the limit of the lien is without meaning and absurd. Construing the whole act together, the reasonable conclusion is that the lien must be enforced by sale within the two years. Thereafter the lien continues by force of the provisions respecting redemption, and in default thereof becomes an estate for years by the delivery of the deed.

The question then arises, When does this limit of two years commence and cease? By the language of the act it is to com-

mence to run " from the time when such taxes so assessed were payable." Considering the importance to the owner and the public of exactitude in regard to the duration of the lien, the language is by no means well chosen. For no particular day seems to be fixed whereon it may be said that taxes become payable. In fact, they are payable for many days. The assessor is required by section 5 of the act concerning taxes (*Rev., p.* 1141,) to deliver the duplicate to the collector at a certain day; the collector is thereupon doubtless authorized to receive taxes. By section 10 of the same act the collector is required, on the 1st day of October, to give public notice of the tax of that year, and that, if not paid by a day therein mentioned, the names of defaulters will be returned to a justice for prosecution. The day thus to be fixed must necessarily be prior to December 20th, because, by section 12 of the same act, the collector is required to return a list of delinquent tax-payers to a justice on that day. The custom, therefore, is to require the payment before December 20th. Taxes are therefore payable, in the sense of being receivable, from the day the collector receives the duplicate; they are payable, in the sense of being due and demanded, from the time of the notice prescribed by section 10, or of the written demand prescribed by section 11. They continue payable until the day fixed by the collector, not later than December 19th. Thereafter, taxes are in arrear, and the tax-payers in default.

Under such circumstances, the intent of the act is not easily ascertained. In my judgment it will be best satisfied by construing it to refer to the period during which taxes are payable. In this view the limit of two years commences to run at the day fixed by the collector in the notice required by section 10. Since that day is commonly the 19th day of December, it will afford a reasonably accurate starting point. This construction will also agree with the popular view that taxes are payable on December 19th.

Under this construction, the period of two years during which the taxes in question continued to be a lien ceased not later than December 19th, 1881. The lien then expired, and

proceedings looking to a sale after that date are without authority. This includes the warrant of December 10th, 1881, for, although issued before the two years expired, it could only be executed after such expiration. By section 4, the advertisement of the sale is required to be for four weeks. The sale ordered to be made was therefore without authority. The prosecutor is therefore entitled to have these proceedings set aside.

Another question was argued, involving the construction of section 16 of the act of 1879, and a determination as to the effect to be given to a cancellation of the record of taxes in the county clerk's office, on a certificate of satisfaction given by the collector.

As the conclusion above arrived at effectually protects the prosecutor, it seems unnecessary to consider this question, which, from the brief examination I have given it, seems not easy of solution.