## BOARD OF COM'RS OF GRAND COUNTY v. KING.

(Circuit Court of Appeals, Eighth Circuit. February 18, 1895.)

### No. 452.

**1. POWER TO TAX—LEGISLATIVE FUNCTION.**

The power to tax is a legislative function exclusively, and cannot be exercised except in pursuance of legislative authority. A court has no taxing powers, and can impart none to the county authorities. It has no jurisdiction to coerce the levy of a tax, except where the law has made it the clear and absolute duty of the proper authorities of the county to levy such tax.

**2. COUNTY WARRANTS.**

When a county is authorized to levy a given rate of tax for general county purposes, no holder of county warrants or of a judgment rendered thereon has a right to demand that a special tax shall be carved out of this general rate and levied for the exclusive purpose of paying his warrants or judgment, unless the statute requires it and leaves the county levying board no discretion.

**3. MANDAMUS—COMPELLING LEVY OF TAX.**

It is not within the power of a court to compel, by mandamus, the levy of a tax to pay a judgment against a county, where no statute expressly makes it obligatory on such county to levy a tax for the purpose, and it does not appear that the judgment was based on a bond or other security, issued under a statute making it obligatory to levy a tax to pay it.

**4. SAME—COLORADO STATUTE.**

One K., the holder of a judgment against G. county, in the state of Colorado, applied to the United States circuit court for a mandamus to compel the county to levy a tax to pay such judgment. The cause of action on which the judgment was rendered did not appear. The statute of Colorado in force when the judgment was rendered (Gen. St. Colo. c. 23, § 7) provided

that, when a judgment was rendered against a county, the same might be paid by the levy of a tax on the taxable property of the county, or by a warrant drawn upon the ordinary county fund, but the county commissioners should not be required to levy a special tax unless in their discretion they should so determine. *Held,* that the county commissioners could not be deprived of their option to pay the judgment by a warrant drawn on the county fund or of their discretion as to levying a special tax, by a mandamus compelling them to levy a tax to pay the judgment.

In Error to the Circuit Court of the United States for the District of Colorado.

This was a petition by Francis G. King against George Bunto, Thomas E. Pharo, and John Rowen, as members of the board of county commissioners of Grand county, for a peremptory mandamus compelling the respondents to levy a tax to pay a judgment against the county held by the petitioner. The circuit court issued the writ. Respondents bring error.

Francis G. King, the defendant in error, filed in the circuit court of the United States for the district of Colorado his petition against George Bunto, Thomas E. Pharo, and John Rowen, as members of the board of county commissioners of Grand county, Colo., plaintiffs in error, alleging that the petitioner, on the 25th day of July, 1891, recovered a judgment in the circuit court of the United States for the district of Colorado, against the county of Grand, for the sum of $6,593 and costs of suit, taxed at $22.95; "that, by the laws of the state of Colorado as they now exist, the said defendants, acting as the board of county commissioners of the county of Grand, have the power and authority, and it is their duty, upon request, to levy or cause to be levied and assessed a tax upon all taxable property in the said county of Grand, sufficient to pay the said judgment, interest, and costs in whole or any part thereof, and to levy such tax or a tax for that purpose from year to year as may be necessary to pay the full amount thereof, together with the interest and costs." The prayer of the petition is "that an alternative writ of mandamus may issue out of and under the seal of this honorable court compelling the said defendants, and each of them, to levy a tax sufficient to pay said judgment, interest and costs, not exceeding the limitation allowed by the statutes in such cases made and provided on the valuation of assessed property for the year 1893, and to make such levy when the annual tax levy for the year 1893 is made, or to show cause before this honorable court, on some day to be fixed and in said writ stated, why they should not make such levy; and that, upon return of the said alternative writ of mandamus, the said defendants be required to answer the allegations in this petition contained; and that, upon a final trial or hearing herein, such writ be made peremptory, and a judgment entered in this court against the said defendants, commanding them, and each of them, to make such levy for the said purposes." The defendants were served with a copy of the petition, which took the place of the alternative writ, and appeared and demurred thereto, which demurrer was overruled. Thereupon the defendants answered, denying that it was their duty under the laws of the state to levy the tax upon the property of the county sufficient to pay the plaintiff's judgment in whole or in part, or to levy a tax for that purpose from year to year or at all. The answer avers that the county is "practically insolvent"; sets out the causes of its insolvency and poverty, and the utter inability of the county to collect, or the taxpayers to pay, taxes in excess of the amount required to pay the ordinary and necessary current expenses of the county; and concludes with this statement: "In view of all which facts, and with careful consideration of all the interests intrusted to their charge, the defendant, the said board of county commissioners of the said county of Grand, believe it to be inexpedient to levy and impossible to collect, in addition to the state and school district taxes, a tax of more than twenty mills on each dollar of valuation, which said tax, since the institution of this action, has been determined upon by the order

of this defendant, and has been divided as follows: For road purposes, three mills; for school purposes, four mills; for the general county fund, ten mills; and for the payment of outstanding indebtedness, three mills. That the said last-mentioned tax, when collected, will be so appropriated and paid to the several creditors of the county as the law shall direct, and as the exigencies of the situation and the equities of the creditors may then seem to require." The case coming on to be heard upon the petition and answer thereto, the court rendered the following judgment: "It is ordered that a peremptory writ of mandamus issue out of this court, directed to the said board of county commissioners of the county of Grand, commanding and enjoining the said board to levy a tax of not less than three mills, for the fiscal year ending November 30, 1893, for the purpose of paying the judgment entered in the above-entitled cause, and the cost and interest thereon accruing, including the costs of this proceeding to obtain a writ of mandamus. And it is further ordered that the said defendants, the board of county commissioners of Grand county, also make a levy of not less than three mills on the assessed value of property in said county for each and every year hereafter until the full amount of said judgment, interest, and costs has been paid, or until the further order of this court in the premises; and that, upon the neglect or refusal of the said board of county commissioners in any year hereafter until said judgment, interest, and costs are fully paid and discharged, to levy a tax of not less than three mills to pay on said judgment, the clerk of this court shall, at the request of said plaintiff, issue a peremptory writ directed to said board, commanding the said board to make such levy for the year for which such application was made,"—and afterwards issued a peremptory writ of mandamus, the material part of which reads as follows: "Now, therefore, we, being willing that full and speedy justice should be done in the premises, do hereby command you, the said board of county commissioners of the county of Grand, to levy a tax of not less than three mills on the assessed value of property in said county, for the fiscal year ending November 30, 1893, for the purpose of paying the judgment entered in the above-entitled cause, and the cost and interest thereon accruing, including the costs of this proceeding to obtain a writ of mandamus; and that in each year hereafter, until full satisfaction of said judgment, with interest thereon, and the costs aforesaid, you levy, assess, and collect the same tax of not less than three mills on the assessed value of property in said county; and that you pay said judgment, interest, and costs in full, lest complaint shall again come to us by your defaults."

Sam W. Jones and L. B. France, for plaintiff in error.

Willard Teller (H. M. Orahood and E. B. Morgan, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge (after stating the facts). The power to raise money by taxation is the highest attribute of sovereignty. It is a power absolutely essential to the existence of civil government. When properly exercised, it is the protection and defense of the state and the security of the citizen; but history shows that it may be converted into the most powerful engine of injustice and oppression, and used to deprive the citizen of his property rather than protect him in its enjoyment. The people of this country have studiously confined the exercise of this delicate and vitally important power to their immediate representatives. Nor have they been willing to entrust their representatives with its unlimited exercise, but have imposed on them constitutional restrictions and limitations in its exercise. They have at all times refused to confer it in any measure or degree on the executive or judicial departments of the govern-

ment. Under our system of government, therefore, the power to tax is a legislative function exclusively, and cannot be exercised except in pursuance of legislative authority. There is no connection between the power to contract debts and the power to levy taxes. The power to contract a debt does not imply the power to levy a tax to pay it. A county may lawfully contract debts which it has no power to levy a tax to pay. And a court may have jurisdiction to render judgment against a county without having the power to coerce the county authorities to levy a tax to pay it. A court has no taxing powers, and can impart none to the county authorities. It has no jurisdiction to coerce the levy of a tax except where the law has made it the clear and absolute duty of the proper authorities of the county to levy such tax. When the law has made it the duty of the levying court or board to levy a tax to pay a specified class of indebtedness, the federal court in which a judgment has been rendered on that class of indebtedness may, by mandamus, compel the assessment, levy, and collection of a tax to pay such judgment; but this, say the supreme court, is the limit of its power. "It cannot make laws when the state refuses to pass them. It is itself but the servant of the law. If the state will not levy a tax or provide for one, the federal judiciary cannot assume the legislative power of the state and proceed to levy the tax." Meriweather v. Garrett, 102 U. S. 472.

The case at bar was tried in the lower court on the pleadings. The plaintiff's whole case, as disclosed by his petition, consists in an allegation of the recovery of the judgment, an averment that it is the duty of the board of county commissioners to levy a tax to pay it, and a prayer that a peremptory writ of mandamus may issue commanding the board to make the levy. The nature of the cause of action or the kind of indebtedness upon which the judgment was recovered is not stated. The plaintiff does not rest his right to the writ upon the ground that the judgment was rendered upon the kind of indebtedness which the law makes it the duty of the board of county commissioners to levy a tax to pay. He rests his right to the writ specifically and exclusively on section 8 of chapter 22 of the General Laws of Colorado of 1877 (page 219, § 435), which reads as follows:

"When a judgment shall be rendered against the board of county commissioners of any county, or against any county officer, in an action prosecuted by or against him in his name of office, when the same shall be paid by the county, no execution shall issue upon said judgment, but the same shall be levied and paid by the tax as other county charges, and when so collected shall be paid by the county treasurer to the person to whom the same shall be adjudged, upon the delivery of a proper voucher therefor: provided, that nothing in this section shall prohibit the county commissioners from paying such judgment by a warrant upon the county treasurer."

In the brief of the learned counsel for the plaintiff, after quoting this section, it is said: "And this is the statute, and the only statute, that covers the case." This section of the statute was amended in some material respects more than four years before the plaintiff recovered his judgment. The section as amended reads as follows:

"Section 1. That section 7 of chapter 23 of the General Statutes of the State of Colorado be and the same is hereby amended so as to read as follows: 'Sec. 7. When a judgment shall be given and rendered against a county of this state in the name of its board of county commissioners, or against any county officer, in an action prosecuted by or against him in his official capacity, or name of office, when the judgment is for money, and is a lawful county charge, no execution shall issue thereon, but the same may be paid by the levy of a tax upon the taxable property of said county, and when the tax shall be collected by the county treasurer, it shall be paid over, as fast as collected by him, to the judgment creditor, or his or her assigns, upon the execution and delivery of proper vouchers therefor; but nothing contained in this section shall operate to prevent the county commissioners from paying all or any part of any such judgment by a warrant drawn by them upon the ordinary county fund in the county treasury: provided, that the power thereby conferred to pay such judgment by a special levy of such tax shall be held to be in addition to the taxing power given and granted to such board, to levy taxes for other county purposes, but the board of county commissioners shall levy under this law only such taxes as they, in their discretion, may deem expedient or necessary, and all taxes levied by authority of this act shall not exceed one and one-half per centum on the dollar of assessed property for any one fiscal year: and, provided, further, that the powers herein given to the board of county commissioners shall not be construed as requiring said board to levy any special tax to pay any judgment, unless in its discretion the said board shall so determine. * * *'" Act approved April 28, 1887.

Touching this amended or substituted section, counsel for the plaintiff in their brief say:

"It is clear, then, that section 7 of the statute as it existed before the amendment of April 28, 1887, is the statute under and upon which the right of the parties hereto must be decided."

The contention of counsel is clearly untenable as applied to the case made by the pleadings. We recognize the well-settled rule that, where negotiable bonds or other like securities are issued by a county under authority of an act of the legislature which makes it obligatory upon the proper county authorities to levy a tax to pay them, the repeal of the act does not affect the power and duty of the county authorities to levy the tax. In such cases the provision of the law making it obligatory upon the county authorities to levy a tax to pay the indebtedness enters into and becomes a part of the consideration of the contract and the legislature cannot repeal the law requiring the levy of the tax without impairing the obligation of the contract. Meriweather v. Garrett, supra; U. S. v. Jefferson Co., 5 Dill. 310, Fed. Cas. No. 15,472. But no claim is made that the judgment in this case was rendered on any such cause of action. There is, indeed, nothing in the record showing that the plaintiff's judgment was rendered on any kind of a contract, or that the cause of action upon which it was rendered had any existence before the repeal of the act. It is obvious, therefore, that a statute repealed four years before this judgment was rendered can have no bearing upon it. In this connection we may observe that there is a wide difference between the rights of the holders of the negotiable bonds of a county, issued under special authority of the legislature, to make subscriptions to the capital stock of railroads, or to fund floating indebtedness, or for other extraordinary expenditures, and the rights of the holders of ordinary county warrants. As we have

seen, the obligation and duty to levy the tax to pay the former class of indebtedness, as provided by the act authorizing its issue, continues until the indebtedness is extinguished, notwithstanding the repeal of the statute; but in the case of ordinary county warrants there is commonly no obligation resting upon the county authorities to levy a special tax for the exclusive purpose of paying the warrants of some particular holder thereof. When a county is authorized to levy a given rate of tax for general county purposes, no holder of county warrants or of a judgment rendered thereon has a right to demand that a special tax shall be carved out of this general rate and levied for the exclusive purpose of paying his warrants or judgment, unless the statute requires it, and leaves the county levying board no discretion. U. S. v. Miller Co., 4 Dill. 233, Fed. Cas. No. 15,776. Any other rule would make it well-nigh impossible for a county indebted in any considerable amount to discharge its functions. Its entire revenues would be absorbed by exacting holders of its warrants, and no funds could be provided for defraying the most necessary objects of county government. In most of the states the law authorizing the issue of county warrants contemplates that they will be satisfied from the ordinary county revenue or be absorbed in the payment of the county taxes. They are not negotiable instruments, and are not intended to circulate as negotiable or commercial securities. In the case of Supervisors v. U. S., 18 Wall. 71, the supreme court held that, under the statutes of Iowa, a mandamus could not issue to compel the county authorities to levy a special tax to pay a judgment rendered on county warrants. In the course of its opinion the court said:

"They [county warrants] were such instruments as the legislature contemplated might be employed in conducting the current and usual business of the county. * * * They are simply a means of anticipating ordinary revenue."

We need not inquire into the rights of holders of such warrants or the judgments recovered thereon, under the laws of Colorado, because there is nothing in the record before us, which we can consider, that shows the plaintiff's judgment was rendered on county warrants. The plaintiff resting his right to a mandamus solely on the fact that he has a judgment against the county, we proceed to inquire what the rights of a judgment creditor of a county are under the Colorado law. Under the statute in force when the plaintiff's judgment was rendered and by which his right to the relief sought must be determined, the county has the option to pay any judgment against it by the levy of a tax or by a warrant drawn upon the ordinary county fund in the county treasury. In this respect the repealed section 7 and the section enacted in lieu of it are identical. The statute confers on the board of county commissioners the option to pay a judgment by the levy of a tax or by drawing a warrant on the treasury, and it is not competent for any court to deprive the board of its right to exercise this option. In the case of Stoddard v. Benton, 6 Colo. 508, 517, the supreme court of Colorado, speaking of the obligations imposed on the county by the original section 7, says:

"If no appeal is perfected or supersedeas allowed, provision must be made for the payment of the judgment. This may be done either by the levy of a tax or by a warrant on the county treasury. In case the commissioners delay or refuse to make provision for payment, a writ of mandamus will lie to compel them to act."

The case of State v. Township Committee, 43 N. J. Law, 518, is identical in principle with the case at bar. A New Jersey statute empowered the authorities to borrow money by the issue of township bonds to pay a certain class of indebtedness or to pay it by the levy of assessments upon the lands benefited by the improvement. The alternative writ of mandamus commanded the authorities that "they do borrow such sum or sums as may be necessary to pay," etc. The writ was held bad. The court said:

"The duty enjoined upon the defendants is to pay. The money wherewith to make payment may be derived from the assessments or from the issue of township bonds. The relators cannot arbitrarily select the means by which the defendants shall perform their duty. If the method of performing the duty is discretionary and optional, a mandamus to compel the defendant to do it in a particular manner is defective, unless it shows the impossibility of the defendant exercising the option."

A similar question arose in the case of Queen v. Southeastern Ry. Co., 4 H. L. Cas. 471. Under 8 & 9 Vict. c. 20, § 46, a railway company has the option, when its line of railway crosses a turnpike road or public highway, either to carry the road over the railway or the railway over the road. It was held that a railroad company could not be deprived of its right of option under this act, and that a mandamus could not rightly issue commanding a company to do one of these two things, unless the writ showed on its face circumstances which established the impossibility of the company exercising the option which belonged to it under the act.

The court below erred, therefore, in issuing a peremptory mandamus requiring the board of county commissioners to pay the plaintiff's judgment by the levy of a tax, and thus depriving them of their option to pay it in warrants if they elected to do so.

It is further provided by section 7 as amended:

"That the powers herein given to the board of county commissioners shall not be construed as requiring said board to levy any special tax to pay any judgment unless in its discretion, the said board shall so determine."

By this provision the question whether a special tax shall be levied to pay a judgment in any case is left to the discretion of the board of county commissioners. It was undoubtedly competent for the legislature to vest this discretion in the board of county commissioners as to all judgments except those recovered on causes of action that accrued under statutes which made it the duty of the board to levy a tax for their payment. But, as to judgments based on indebtedness as to which no such obligation exists, there is no impediment in the way of the legislature withholding altogether the power to levy a special tax for their payment, and, if it grants the taxing power at all for the payment of such judgments, it may impose just such conditions and limitations on its exercise as it sees proper. Under this act, the discretion as to the levy of the tax is vested in the board of county commissioners, because they are

charged with the administration of the affairs of the county, and familiar with its financial resources and its needs and the condition of its taxpayers. It is not reasonable to suppose that the legislature would ever invest a federal court with the exercise of this discretion.

It is a fundamental rule, underlying the entire jurisdiction by mandamus, "that in all matters requiring the exercise of official judgment or resting in the sound discretion of a person to whom a duty is confided by law, mandamus will not lie either to control the exercise of that discretion or to determine upon the decision which shall be finally given." High, Extr. Rem. § 42, and cases cited. "It cannot issue in a case where discretion and judgment are to be exercised by the officer." U. S. v. Seaman, 17 How. 225, 231; Heine v. Commissioners, 19 Wall. 655; Id., 1 Woods, 247, Fed. Cas. No. 6,325, opinion by Mr. Justice Bradley.

In the late case of U. S. v. Lamont, 15 Sup. Ct. 97, the court say:

"It is elementary law that mandamus will only lie to enforce a ministerial duty as contradistinguished from a duty which is merely discretionary."

After citing numerous authorities, the court proceeds:

"The duty to be enforced by mandamus must not only be merely ministerial, but it must be a duty which exists at the time when the application for the mandamus is made. Thus, in the case of Ex parte Rowland, 104 U. S. 604, this court, speaking through Mr. Chief Justice Waite, said: 'It is settled that more cannot be required of a public officer by mandamus than the law has made it his duty to do. The object of the writ is to enforce the performance of an existing duty, not to create a new one.' Moreover, the obligation must be both peremptory, and plainly defined. The law must not only authorize the act (Com. v. Boutwell, 13 Wall. 526), but it must require the act to be done. 'A mandamus will not lie against the secretary of the treasury unless the laws require him to do what he is asked in the petition to be made to do' (Reeside v. Walker, 11 How. 272. See, also, Secretary v. McGarrahan, 9 Wall. 298); and the duty must be 'clear and indisputable' (Commissioners v. Aspinwall, 24 How. 376)."

The judgment of the circuit court is reversed, and the cause remanded, with directions to grant a new trial.