In the Matter of the Dissolution of the
MOUNTAIN VIEW PUBLIC
UTILITY DISTRICT NO. I.

Sidney J. WOOD, Appellant,

v.

C. C. GRAY, Appellee.

No. 41.

Supreme Court of Alaska.

Feb. 24, 1961.

John M. Savage, Robison, McCaskey & Savage, Anchorage, for appellant.

Ralph H. Cottis, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Associate Justice.

The question to be determined is whether the court below had jurisdiction to appoint a receiver for an incorporated public utility district.

On April 13, 1954 an election was held for the purpose of dissolving the Mountain View Public Utility District No. 1. This action was taken in accordance with a statute [1] which incorporated by reference the procedure for dissolution of municipal corporations in Alaska.[2]

On April 1, 1955 there was filed in the district court a petition for the appointment of receivers. It alleged that the Mountain View Public Utility District No. 1 had been dissolved by virtue of the 1954 election, that the District's Board of Directors had been winding up its affairs, that the terms of office of two of the directors would expire on April 12, 1955, and that it would be uneconomical and impracticable to hold an election for successors. The petition asked for the appointment of receivers to complete unfinished business—principally, the sale of property for delinquent taxes.

■ The petition was signed only by counsel who represented that they were attorneys for the District, and was not verified.[3] There were no supporting documents showing that the governing body of the District had authorized the application for a receivership; there was only a brief statement in the petition to the effect that the Board had recommended that two of the directors, Gray and Irvin, be appointed receivers.

No further showing was made and on the same day, without notice, the district court granted the petition and entered its order appointing Gray and Irvin receivers for the District. They were authorized to take charge of the effects of the District, to collect debts and property due and belonging to it, and to do other acts that might be necessary for the final settlement of its unfinished business.

In December 1955, following a hearing, the court instructed the receivers to institute proceedings to collect one-half of the

1. Section 49–2–13 A.C.L.A.1949, as amended by S.L.A.1953, ch. 97.

2. See § 16–1–5 A.C.L.A.1949.

3. Rule 66, Fed.R.Civ.P., 28 U.S.C.A., which governed the practice in the Territorial District Court, does not expressly provide for verification of the petition for appointment of a receiver. However, the rule does provide that the practice in the administration of estates by receivers shall be in accordance with the practice theretofore followed in the federal courts. That practice required the complaint to be verified. See 2 Moore, Federal Practice, § 11.03 at 2106, n. 6. (2d ed. 1948).

property taxes which had been levied by the District prior to the 1954 dissolution election. The other half of the taxes were forgiven, as were all interest and penalties. On March 11, 1957 Gray obtained an order permitting him to wind up the affairs of the District, since his co-receiver, Irvin, had died. In his motion he alleged that the dissolution was virtually accomplished and that the only unfinished business involved the redemption of properties sold at the tax sale.

Two years later he petitioned the court for instructions relating to the settlement of a tax obligation of one taxpayer. Apparently, this was the final document filed by the receiver. The record does not show that he has made any report or rendered any account with respect to properties that presumably were sold for taxes. There is no order winding up the receivership, and none dissolving and vacating the utility district.[4]

The appellant, Sidney J. Wood, was the owner of certain real property sold by the receivers for delinquent taxes. On July 23, 1959 he filed in this proceeding a motion to intervene under Rule 24(a), Federal Rules of Civil Procedure [5], and a motion to declare void the appointment of the receivers. He asserted that the receivers had sold his property and issued a tax deed to a purchaser at the tax sale, that such purported sale of his property was without effect because the district court had no jurisdiction or authority to appoint a receiver for a public utility district, that this had created a cloud on Wood's title to the property involved, and that if he were not permitted to intervene and test the validity of the receivers' appointment he would have no recourse at law or equity to remove

the cloud. The court granted the motion to intervene; but it denied Wood's motion to declare void the appointment of the receivers, saying in a brief memorandum opinion filed February 19, 1960 that—

"* * * I am of the opinion and hereby find that laches on the part of the intervenor bars the relief sought. Almost five (5) years have passed since a very competent judge appointed the receiver. To permit the intervenor to come in and set aside the receivership based upon essentially technical and legalistic grounds at this late date and thus undo all the work and effort of the receiver is not warranted in equity."

Wood filed a motion for reconsideration, coupled with a motion to declare void the tax sale that had been conducted by the receiver in 1957. Both motions were denied by the court in an order entered March 4, 1960, and from such order this appeal was taken.

In a sketchy, two-page brief the receiver does not touch on the main question presented—that of whether the district court had jurisdiction to appoint a receiver for a utility district. His argument is limited to two points: (1) that Wood is in effect attempting to appeal from the district court's order of April 1, 1955, and that the time for appeal has long since expired; and (2) that the court's memorandum opinion of February 19, 1960 and the order of March 4, 1960 are not "final judgments" within the meaning of Rule 6, Rules of the Supreme Court [6], and thus are not subject to review by this court on appeal. No authorities are cited in support of these propositions.

The first point may be conceded; no appeal was taken from the 1955 order appoint-

---

4. Section 16–1–5 A.C.L.A.1949 provides that if three-fifths of the persons voting have voted in favor of dissolution "the court shall enter an order dissolving and vacating said corporation."

5. This rule provides in part that—
"Upon timely application anyone shall be permitted to intervene in an action: * * * (3) when the applicant is so situated as to be adversely affected by a

distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

6. Rule 6 provides: "An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal, * * *."

ing the receivers. Had Wood been a party to the proceeding at that time, he would have had the right to appeal to the United States Court of Appeals for the Ninth Circuit.[7] And he probably would have been required to exercise that right within the thirty day period provided by Rule 73 (a), Federal Rules of Civil Procedure, or else lose the opportunity of questioning the receivers' appointment. His appeal from a subsequent order refusing to vacate the receivership would undoubtedly not have been allowed.[8]

But the situation is different where the question is raised by a person who was not a party to the proceeding at its inception, but who became a party later after the time for appeal had expired, and thus had no opportunity and no right to appeal from the original order.[9] That is Wood's position. His first chance to be heard with reference to the appointment of the receivers was when he was permitted to intervene and file his motion attacking the validity of the appointment. Since the order appointing the receivers was entered on the same day that the petition was filed, and without notice to anyone, the receiver cannot properly argue that Wood ought to have become a party in 1955 before the time for appeal had expired.

The denial of the relief sought by Wood could hardly be considered interlocutory. It definitely and conclusively determined the matter which he had brought before the court. The effect was to leave him without any relief until the receivership was terminated; he had no adequate remedy except by recourse to an appeal. The court's action in denying Wood's motion to void the receivers' appointment and to invalidate the 1957 tax sale was a final decision as to Wood and was appealable.[10] There is authority to the contrary [11], but even if it were to be followed there would be no obstacle to this court considering the matter. Our rules provide for review of interlocutory orders [12], and to prevent hardship and injustice this court on its own motion could treat the appeal as a petition for review and decide the questions presented to the same extent and with the same effect as on an appeal.[13]

Wood's appeal was taken from the March 4, 1960 order denying the motion for reconsideration, and the receiver argues that this was not a "judgment" from which an appeal could be taken under Rule 6. That is the generally accepted doctrine.[14] The appeal ought to have been taken from the memorandum opinion of February 19, 1960 which, although not formally a judgment and so labeled [15], will be considered as such here because it clearly evidences the judge's intent to presently and finally dispose of the motion to void the receivership.[16] This was a mistake on Wood's part, but it will be disregarded as harmless since it clearly appears from the record as

---

7. The United States Court of Appeals had jurisdiction of appeals from the District Court for the District (Territory) of Alaska at that time. See 62 Stat. 929 (1948), 28 U.S.C.A. § 1291 (1949). And it also had jurisdiction of appeals from various interlocutory orders, including those "appointing receivers." 28 U.S.C.A. § 1292(2) (1949).

8. Mitchell v. Lay, 9 Cir., 1931, 48 F.2d 79, 85, certiorari denied 1931, 283 U.S. 864, 51 S.Ct. 656, 75 L.Ed. 1469; Coskery v. Roberts & Mander Corp., 3 Cir., 1951, 189 F.2d 234, 237.

9. Mitchell v. Lay, supra note 8, 48 F.2d at page 85.

10. Ibid.; Odell v. H. Batterman Co., 2 Cir., 1915, 223 F. 292, 295–296. See also Gas & Electric Securities Co. v. Manhattan & Queens Traction Corp., 2 Cir., 1920, 266 F. 625, 632–633.

11. Coskery v. Roberts & Mander Corp., supra note 8, 189 F.2d at page 236.

12. Supreme Ct.R. 23–33.

13. Stokes v. Van Seventer, Alaska 1960, 355 P.2d 594, 595.

14. See 6 Moore, Federal Practice, § 59.15 [1], at 3891–3892 (2d ed. 1953).

15. 6 Moore, Federal Practice, § 58.02, at 3505 (2d ed. 1953).

16. United States v. F. & M. Schaefer Brewing Co., 1958, 356 U.S. 227, 232, 78 S.Ct. 674, 2 L.Ed.2d 721, 726.

a whole that his intent was to appeal from the judgment of February 19.[17]

▮▮▮▮ A public utility district in Alaska is a quasi-municipal corporation [18], i. e., a public agency created by authority of the legislature to aid the state in some public or state work for the general welfare.[19] Among the powers conferred upon it is the power to levy and collect taxes upon real and personal property.[20] Taxation is inherently a function of the legislature and can be exercised only under its authority. It has the sole power to authorize a tax, and therefore it must equally possess the sole power to designate, regulate and control the means by which taxes are collected and enforced.[21] It follows, then, that when the legislature has not conferred such authority on the judiciary, the latter does not have the power to appoint a receiver to enforce collection of utility district taxes by the sale of the taxed property.[22]

The legislature had not delegated this function to the judicial branch. The role to be played by the court in the dissolution of a public utility district was limited. If certain conditions existed and the requisite petition was filed, the court was required to order an election on the question of whether the district should be dissolved. Then if the proposition voted on was approved, an order was to be entered dissolving and vacating the district.[23] But such order was not to be made until all of the indebtedness owing by the district was paid or secured.[24] The court has been given no authority in the intervening period to take over or regulate the performance of the district's governmental functions, such as the collection of taxes. Logically, then, until the statutory condition had been fulfilled and the order of dissolution entered, those functions would be carried out by the district's governing body, its board of directors, upon whom the legislature had particularly conferred the duty and authority of levying and collecting taxes.[25] If the Board failed to perform that duty— because, e. g., of the expiration of the members' terms of office and no election of successors—the remedy is in the legislature to vest the power in some other agency. The power is not inherent in the court; its attempted exercise, at least in the absence of clear legislative permission, would be an invasion by the judiciary of the legislative functions of government.[26]

Legislative consent to judicial interference is lacking not only in our statutes dealing with public utility districts but also in those relating to receivers. The fourth subdivision of Section 55-6-91 A.C.L.A. 1949 authorized the court to appoint a receiver in any civil action or proceeding—

> "In cases provided in this code, or by other statutes, when a corporation has been dissolved, or is insolvent or in

---

17. Atlantic Coast Line R. Co. v. Mims, 5 Cir., 1952, 199 F.2d 582, 583. And see 6 Moore, Federal Practice, supra note 14, at 3892.

18. Houck v. Eastchester Public Utility District, D.C.D.Alaska 1952, 104 F. Supp. 588, 590, 13 Alaska 674, 678; 1 McQuillan, Municipal Corporations, § 2.-29, at 484–485 (3d ed. 1949).

19. 1 McQuillan, Municipal Corporations, supra note 18, § 2.13, at 467.

20. Section 49-2-28 A.C.L.A.1949, as amended by S.L.A.1957, ch. 174, § 60.

21. Meriwether v. Garrett & Sons, 1880, 102 U.S. 472, 515-518, 26 L.Ed. 197, 205-206.

22. Cf. Heine v. Board of Levee Commissioners, 1874, 19 Wall. 655, 86 U.S. 655, 661, 22 L.Ed. 223, 226; Meriwether v. Garrett & Sons, supra note 21; Thompson v. Allen County, 1885, 115 U.S. 550, 558, 6 S.Ct. 140, 29 L.Ed. 472, 475. See Annotation, 113 A.L.R. 755, 757 (1938).

23. Section 49-2-13 A.C.L.A.1949, as amended by ch. 97 S.L.A.1953; § 16-1-5 A.C.L.A.1949.

24. Ibid.

25. Sections 49-2-28 to 49-2-30 A.C.L.A. 1949.

26. Heine v. Board of Levee Commissioners, supra note 22, 19 Wall. at page 661, 86 U.S. at page 661, 22 L.Ed. at page 226.

imminent danger of insolvency, or has forfeited its corporate rights."

 But this had no application. Ordinarily the word "corporation" does not include a municipal or quasi-municipal corporation unless such construction is required by the context of the statute.[27] If it were so construed here it would result in an encroachment by the judiciary in a field that is inherently and traditionally subject only to legislative control. We must assume that the legislature would have used more specific language to accomplish such an effect.

 The district court did not have jurisdiction to appoint receivers for the Mountain View Public Utility District. This was a matter beyond the scope of authority granted it. Here there was a want of power, as distinguished from error in the exercise of a power possessed.[28] Hence, the order appointing receivers for the District was void.[29] It was entirely inoperative; it conferred no rights and afforded no basis for action taken under it.[30] It could be attacked at any time; laches on the part of Wood could not give it life.[31] The various actions taken by the receivers which culminated in the sale of Wood's property were all without authority of law and of no legal effect.[32]

The district court erred in denying the motion to void the appointment of the receivers. The judgment is reversed, and the case is remanded to the Superior Court, Third District, for proceedings that may be necessary in conformity with this opinion.

27. Wilcox v. City of Idaho Falls, D.C. N.D.Idaho 1938, 23 F.Supp. 626, 629; City of Webster Groves v. Smith, 1937, 340 Mo. 798, 102 S.W.2d 618, 619; State v. Central Power & Light Co., 1942, 139 Tex. 51, 161 S.W.2d 766, 768; Poynter v. County of Otter Tail, 1947, 223 Minn. 121, 25 N.W.2d 708, 715–716.

28. See Johnson v. Manhattan Ry. Co., 1933, 289 U.S. 479, 496, 53 S.Ct. 721, 77 L.Ed. 1331, 1344.

29. United States to Use of Wilson v. Walker, 1883, 109 U.S. 258, 266, 3 S.Ct.

277, 27 L.Ed. 927, 929; Ex parte Sawyer, 1888, 124 U.S. 200, 221, 8 S.Ct. 482, 31 L.Ed. 402, 409.

30. Ex parte Myers, 1931, 121 Neb. 56, 236 N.W. 143, 144.

31. 7 Moore, Federal Practice, § 60.25 [4], at 274 (2d ed. 1955); People v. Miller, 1930, 339 Ill. 573, 171 N.E. 672, 675; Anderson v. Anderson, 1937, 292 Ill.App. 421, 11 N.E.2d 216, 219.

32. Cf. Kalb v. Feuerstein, 1940, 308 U.S. 433, 443, 60 S.Ct. 343, 84 L.Ed. 370, 377.