## THOMPSON v. ALLEN COUNTY & Others.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

Argued November 12, 13, 1885.—Decided November 23, 1885.

The proposition that the levy and collection of taxes, though they are to be raised for the satisfaction of judgments against counties or towns, is not within the jurisdiction of a court of equity, reviewed and re-affirmed.

The fact that the remedy at law by mandamus for levying and collecting taxes has proved ineffectual, and that no officers can be found to perform the duty of levying and collecting them, is no sufficient ground of equity jurisdiction.

The principle is the same where the proper officers of the county or town have levied the tax and no one can be found to accept the office of collector of taxes. This gives no jurisdiction to a court of equity to fill that office or to appoint a receiver to perform its functions.

The inadequacy of the remedy at law, which sometimes justifies the interference of a court of equity, does not consist merely in its failure to produce the money, a misfortune often attendant upon all remedies, but that in its nature or character it is not fitted or adapted to the end in view; for, in this sense, the remedy at law is adequate, as much so, at least, as any remedy which chancery can give.

The facts which make the case are stated in the opinion of the court.

*Mr. Charles Eginton [Mr. W. O. Dodd* was with him on the brief] for appellant.

*Mr. John Mason Brown [Mr. Alexander P. Humphrey* and *Mr. George M. Davie* were with him on the brief] for appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This was an appeal from a decree of the Circuit Court of the United States for the District of Kentucky, dismissing the bill of the appellant, who was plaintiff in that court.

The case was tried on bill, answer, exceptions to the answer, and a stipulation as to the facts.

The substance of the bill was, that plaintiff had obtained against Allen County, in that court, two judgments at law, amounting to over $27,000, on coupons for interest on bonds issued by the county to pay for subscription to the stock of the Cumberland and Ohio Railroad Company. That, after executions on these judgments had been duly returned " no property found," the court, at the instance of the plaintiff, issued writs of mandamus to the justices of the Allen County Court, under which they levied a tax of $2.08 on every hundred dollars' worth of taxable property in the county to pay said judgments. That, at the same time, they elected one J. T. Stork collector of said tax levy, and made an order that he give bond with good security as such collector, and proceed to collect the levy and pay it over in satisfaction of the judgments. That Stork refused to give bond as required, and refused to accept and qualify as such collector; and that, by reason of the hostility of the citizens and tax-payers of Allen County, no one could be found in the county who would perform the duty of collector.

The bill then gave the names of about thirty of the principal tax-payers of the county, with the value of the assessed property of each, and the amount of tax due from him under said levy, alleging that the tax-payers were too numerous to be sued, and praying that these might be sued as defendants representing all others in like circumstances, and be required, with the county, to answer the bill.

The prayer of the bill for relief was, that, inasmuch as the complainant was without remedy at law, the court sitting in chancery would appoint a receiver, who should collect these taxes, and that the money arising therefrom be from time to time paid over in satisfaction of plaintiff's judgments, and that the several tax-payers of said county, made defendants, be re-

quired to pay into court, with like effect the sums due by them as alleged in the bill.

A joint answer was filed by Allen County and the other defendants who were served with process. They admitted the recovery of the judgments, the return of the executions " *nulla bona*," the issue of the writs of mandamus, and the levy of the tax by the County Court. They also admitted the election of Stork as collector and his refusal to serve, and they denied everything else. They said that the bonds were procured by fraud and without consideration, the road was never built, the tax was unjust and oppressive, and they denied the jurisdiction of the court, sitting as a court of equity, to collect these taxes, which could only be done by a collector of taxes for said county, appointed according to law, and not otherwise. Exceptions were filed to this answer, which were not passed upon, but the case was heard on bill, answer, exceptions, and the following stipulation :

" By leave of the court the parties now stipulate of record in this cause :

" 1. That the county court of Allen County has in good faith and diligently endeavored to find a fit and proper person to act as collector of the railroad taxes in said county, and of the special levies of taxes in the bill of complaint set forth.

" 2. That no such fit and proper person can be found who will undertake and perform the office and duty of such collector.

" 3. That the complainant is without remedy for the collection of its debt herein, except through the aid of this court in the appointment of a receiver, as prayed for in the bill, or other appropriate order of the court."

The hearing was had before the circuit justice and the circuit judge, who certified that they were opposed in opinion on the following questions occurring in the progress of the case :

" 1. Whether taxes levied under judicial direction can be collected through a receiver appointed by the court of chancery, if there is no public officer with authority from the legislature to perform the duty.

" 2. Whether taxes levied by State officers under judicial

direction can be collected through a receiver appointed by the United States court, where the legislature has provided an officer to collect, but there is a vacancy in office and no one can be found who is willing to accept the office.

"3. Whether a court of chancery can grant any relief to complainant upon the facts recited in the bill, answer, and stipulation, as presented in this record."

A decree was rendered in accordance with the view of Presiding Justice Matthews, whose opinion is found in the record, by which the bill was dismissed. 13 Fed. Rep. 97. An appeal was taken to this court.

The questions on which the judges of the Circuit Court divided are not new in this court, for, while the subject, in the precise form presented in the first and second questions, may not have been decided, the whole subject has been often before us, and the principles which govern it have been well considered.

The cases in which it has been held that a court of equity cannot enforce the levy and collection of taxes to pay the debts of municipal corporations began with *Walkley* v. *City of Muscatine*, 6 Wall. 481.

In that case, the complainant Walkley had procured judgments against the city of Muscatine for interest on bonds of the city, executions had been returned "*nulla bona,*" the mayor and aldermen had refused to levy a tax for the payment of the judgments, and had used the annual tax for other purposes and paid nothing to plaintiff.

Walkley then filed his bill in equity praying a decree that the mayor and aldermen be compelled to levy a tax and appropriate so much of its proceeds as might be necessary to pay his judgments.

This court said, by Mr. Justice Nelson, that the remedy was by mandamus at law, and "we have been furnished with no authority for the substitution of a bill in equity and injunction for the writ of mandamus," p. 483; and he adds, that "a court of equity is invoked as auxiliary to a court of law in the enforcement of its judgments only when the latter is inadequate to afford the proper remedy," pp. 483–4.

By inadequacy of the remedy at law is here meant, not that it fails to produce the money—that is a very usual result in the use of all remedies—but that in its nature or character it is not fitted or adapted to the end in view. This is clearly stated in the next case in this court on the same subject, namely, *Rees* v. *Watertown*, 19 Wall. 107.

In that case, as in this, execution on a judgment against the city of Watertown had been returned "no property found." Writs of mandamus had been issued requiring the levy of a tax to pay the judgment. These writs had failed by reason of resignations of the officers of the city to whom they were directed, and this had occurred more than once. The court was pressed with the doctrine that, the writ of mandamus having proved inadequate, a court of equity should provide some other remedy. To this it replied: "We apprehend also that there is some confusion in the plaintiff's proposition, upon which the present jurisdiction is claimed. It is conceded, and the authorities are too abundant to admit of question, that there is no chancery jurisdiction where there is an adequate remedy at law. The writ of mandamus is, no doubt, the regular remedy in a case like the present, and ordinarily it is adequate and its results are satisfactory. The plaintiff alleges, however, in the present case, that he has issued such a writ on three different occasions; that by means of the aid afforded by the legislature, and by the devices and contrivances set forth in the bill, the writs have been fruitless; that in fact, they afford him no remedy. The remedy is in law and in theory adequate and perfect. The difficulty is in its execution only. The want of a remedy, and the inability to obtain the fruits of a remedy, are quite distinct, and yet they are confounded in the present proceeding. To illustrate: the writ of *habere facias possessionem* is the established remedy to obtain the fruits of a judgment for the plaintiff in ejectment. It is a full, adequate, and complete remedy. Not many years since there existed in central New York combinations of settlers and tenants disguised as Indians, and calling themselves such, who resisted the execution of this process in their counties, and so effectually that for some years no landlord could gain possession of his land. There was a

perfect remedy at law, but through fraud, violence or crime, its execution was prevented. It will hardly be argued that this state of things gave authority to invoke the extraordinary aid of a court of chancery. The enforcement of the legal remedies was temporarily suspended by means of illegal violence, but the remedies remained as before. It was the case of a miniature revolution. The courts of law lost no power, the court of chancery gained none. The present case stands upon the same principle. The legal remedy is adequate and complete, and time and the law must perfect its execution," pp. 124-5.

The language here used is not only applicable to the case under consideration, but in regard to the facts they are the same.

In that case the court said: "The plaintiff invokes the aid of the principle that, all legal remedies having failed, the court of chancery must give him a remedy; that there is a wrong which cannot be righted elsewhere, and hence the right must be sustained in chancery. The difficulty arises from too broad an application of a general principle. . . . Generally its jurisdiction [chancery] is as well defined and limited as is that of a court of law. . . . Lord Talbot says, 'There are cases, indeed, in which a court of equity gives remedy where the law gives none; but where a particular remedy is given by law, and that remedy bounded and circumscribed by particular rules, it would be very improper for this court [chancery] to take it up wh re the law leaves it, and extend it further than the law allows. Generally its jurisdiction depends upon legal obligations, and its decrees can only enforce remedies to the extent and in the mode by law established. . . . A court of equity cannot, by avowing there is a right but no remedy known to the law, create a remedy in violation of law, or even without the authority of law. It acts upon established principles not only, but through established channels." pp. 121-122.

The court also said the power to direct a tax to be levied is the highest attribute of sovereignty, and is exercised by legislative authority only. It is a power that has not been extended to the judiciary. " Especially," says the opinion, " is it beyond

the power of the Federal judiciary to assume the place of a State in the exercise of this authority at once so delicate and so important." pp. 116–117.

These propositions are reasserted in a later case of the same term of the court. *Heine* v. *The Levee Commissioners*, 19 Wall. 655.

It was, like the present, a bill in chancery to enforce collection of taxes where no officers could be found whose duty could be enforced by mandamus. "There does not," said the court, "appear to be any authority, founded on the recognized principles of a court of equity, on which this bill can be sustained. If sustained at all, it must be on the very broad ground that, because the plaintiff finds himself unable to collect his debt by proceedings at law, it is the duty of a court of equity to devise some mode by which it can be done. It is, however, the experience of every day and of all men, that debts are created which are never paid, though the creditor has exhausted all the resources of the law. It is a misfortune which, in the imperfection of human nature, often admits of no redress. The holder of a corporation bond must, in common with other men, submit to this calamity when the law affords no relief." p. 660.

The court added that the exercise of the power of taxation belonged to the legislature and not to the judiciary, and, in that case, it had delegated the power to the Levee Commissioners. "If that body has ceased to exist, the remedy is in the legislature, either to assess the tax by special statute, or to vest the power in some other tribunal. It certainly is not invested as in the exercise of an original jurisdiction in any Federal court." p. 661. "It is not only not one of the inherent powers of the court to levy and collect taxes, but it is an invasion by the judiciary of the Federal government of the legislative functions of the State government." Ib. And it cites *Walkley* v. *Muscatine*, and *Rees* v. *Watertown*, as in point.

Mr. Justice Bradley, who decided this case on the circuit, had there elaborately discussed the whole subject. See *Heine* v. *Levee Commissioners*, 1 Woods, 246. This language is re-

peated and approved in *State Railroad Tax Case,* 92. U. S. 575, 615.

The same principles are laid down in *Barkley* v. *Levee Commissioners,* 93 U. S. 258, in which the whole subject is reviewed. It is said there that the power to compel, by mandamus, municipal officers to perform the ministerial duty of levying proper taxes is a distinct power from the levy and collection of taxes by a court of chancery, and "the truth is, that a party situated like petitioner" (where there were no such officers) "is forced to rely on the public faith of the legislature to supply him a proper remedy. The ordinary remedy having failed by the lapse of time and the operation of unavoidable contingencies, it is to be presumed that the legislature will do what is equitable and just, and, in this case, legislative action seems to be absolutely requisite." pp. 265–6.

In the case of *Meriwether* v. *Garrett,* 102 U. S. 472, the legislature of Tennessee had repealed the charter of the city of Memphis and abolished the city organization, at a time when there were taxes assessed and uncollected amounting to several millions of dollars, and debts of the city to a much larger amount. Some of these taxes had been levied under compulsion of writs of mandamus from the Circuit Court of the United States. A bill in chancery was filed in that court by some of these creditors praying the appointment of a receiver, who should take charge of all the assets of the city of Memphis, collect these taxes, and pay them over to the creditors, and generally administer the finances of the extinct city as a court of equity might administer the insolvent estate of a dead man.

The decree of the Circuit Court, granting relief according to the prayer of the bill, was reversed in this court, and the bill dismissed.

Owing to a division in the court no elaborate opinion representing the whole court was given, but the chief justice announced eight propositions, on which the majority were agreed. Of these propositions the following are pertinent here:

"3. The power of taxation is legislative and cannot be exercised otherwise than under the authority of the legislature.

"4. Taxes levied according to law before the repeal of the charter, other than such as were levied in obedience to the special requirement of contracts entered into under the authority of law, and such as were levied under judicial direction for the payment of judgments recovered against the city, cannot be collected through the instrumentality of a court of chancery at the instance of the creditors of the city. Such taxes can only be collected under authority from the legislature. If no such authority exists, the remedy is by appeal to the legislature, which alone can grant relief. Whether taxes levied in obedience to contract obligations, or under judicial direction, can be collected through a receiver appointed by a court of chancery, if there be no public officer charged with authority from the legislature to perform that duty, is not decided, as the case does not require it." p. 501.

But though the question was not then decided, and it is urged upon us now, we see no more reason to hold that the collection of taxes already assessed is a function of a court of equity than the levy or assessment of such taxes. A court of law possesses no power to levy taxes. Its power to compel officers who are lawfully appointed for that purpose, in a case where the duty to do so is clear, and is strictly ministerial, rests upon a ground very different from and much narrower than that under which a court of chancery would act in appointing its own officer either to assess or collect such a tax.

In the one case the officers exist, the duty is plain, the plaintiff has a legal right to have these officers perform that duty for his benefit, and the remedy to compel this performance, namely, the writ of mandamus, has been a well known process in the hands of the courts of common law for ages. In the other there exists no officer authorized to levy the tax or to collect it when levied. The power to enforce collection when the tax is levied, or to cause it to be levied by existing officers, is a common-law power, strictly guarded and limited to cases of mere ministerial duty, and is not one of the powers of a court of chancery. It would require in this court, not the compulsory process against some existing officer to make him

perform a recognized duty, but the appointment by the court of such an officer and a decree directing him what to do.

In the one case, his power proceeds from the law, and he is compelled to exercise it; in the other, it proceeds from the court which first makes its own decree, and makes an officer to enforce it. No such power has ever yet been exercised by a court of chancery. The appointment of its own officer to collect taxes levied by order of a common-law court is as much without authority, as to appoint the same officer to levy and collect the tax. They are parts of the same proceeding, and relate to the same matter. If the common law court can compel the *assessment* of a tax, it is quite as competent to enforce its *collection* as a court of chancery. Having jurisdiction to compel the assessment, there is no reason why it should stop short, if any further judicial power exists under the law, and turn the case over to a court of equity. Its sheriff or marshal is as well qualified to collect the tax as a receiver appointed by the court of chancery.

The difficulty is that no power exists in either court to fill the vacancy in the office of tax collector; and the case of *Lee County Supervisors* v. *Rogers*, 7 Wall. 175, where the laws of the State of Iowa expressly authorized the court to enforce its writ of mandamus by making such appointment, the only case in which it has ever been done, shows that without such legislative authority it cannot be done.

It is the duty of the marshals of the Federal courts and the sheriffs of State courts to levy executions issuing from these courts on the property of defendants, and sell it, to raise money to pay their judgments. Let us suppose that, for some reason or other, the office of marshal or sheriff became vacant for a while. Would that authorize the court of equity of the Federal or State government to appoint a sheriff or marshal? or to appoint a receiver to levy the execution? or, if it had been levied, to sell the property, collect the purchase-money, and pay it to plaintiff? If this cannot be done, if it never has been done, why can it do a much more unjudicial act, by appointing a collector to collect the taxes, or, what is still less appropriate, appointing a receiver, and endow him with that power?

To appoint a marshal or a sheriff to execute the process of a court to enforce the judgment of that court, is not such a wide departure from the judicial function as to appoint a receiver to collect taxes; but no case has been cited of the exercise of even the former power by the court, much less the appointment, by a court of chancery, of an officer to execute the processes of a court of law. The appointment of special masters or commissioners to make sales under decrees in chancery, is the ordinary mode of that court to enforce its decrees in cases where the court has jurisdiction of the subject matter of the suit.

. Not only are the decisions here reviewed of our own court clearly opposed to the exercise of this power by the court of equity, but the decisions of the highest court of the State of Kentucky are equally emphatic. It is the powers derived from the statute law of that State under which alone this tax can be collected. The issue of the bonds on which the judgment was obtained was by virtue of a special statute, and that statute prescribed the mode of levying and collecting this tax.

It enacted that its collection should not be by the sheriff who collected the ordinary taxes for the State and county, but that a special tax collector should be appointed for that purpose by the justices of the County Court who levied the tax. The Court of Appeals, construing this statute, which was in existence when the bonds were issued, holds that no other officers but these can collect the taxes, and has decided, both in reference to this law and the Constitution of the State, that a court of chancery cannot appoint such an officer or exercise this function of tax collector. *McLean County Precinct* v. *Deposit Bank*, 81 Ky. 254.

This decision, if not conclusive, is entitled to great weight as construing the statute under which alone this tax can be levied and collected.

These considerations require that the answers to each of the three questions certified to us by the judges of the Circuit Court be in the negative, and that the decree of that court dismissing the bill be

MR. JUSTICE HARLAN dissenting.

The present case presents a question not heretofore decided by this court.

The appellant has judgments against the county of Allen, in the Commonwealth of Kentucky, which were rendered in the Circuit Court of the United States for the Kentucky District, for the amount of unpaid interest on bonds issued by that county in payment of its subscription to the capital stock of a railroad company, the subscription having been made and the bonds issued under express legislative authority. The County Court refused to levy a tax to satisfy such judgments, although it was authorized and required by the act, in virtue of which the bonds were issued, to levy "as listed and taxed under the revenue laws of the State, a sum sufficient to pay the interest on such bonds as it accrues, together with the costs of collecting the same." It was further provided, by the same act, that the County Court "may appoint collectors for said tax," or may require the sheriff to collect the tax.

In 1876 the General Assembly of Kentucky passed a special act releasing the sheriff of Allen County from the duty of giving bond for the collection of any railroad tax, and providing that the "County Court shall, at the instance or motion of any person, or by request, appoint a special collector to collect all taxes or levies on said county for railroad purposes; and shall require bonds, with security, to be approved by the court, for the faithful discharge of all duties incumbent on him."

Execution upon Thompson's judgments having been returned "no property," and the County Court having refused to levy a tax to pay them, the Circuit Court, upon Thompson's application, issued a mandamus against the judge and justices constituting the County Court, commanding them to perform the duty, enjoined by statute, of levying and causing to be collected, from the taxable property of the county, a sum sufficient to satisfy the before-mentioned judgments, and the costs of collecting the same. Subsequently, on May 28, 1881, the County Court, in conformity with the foregoing order, made a levy upon the taxable property of the tax-payers of the county "to pay the judgments in favor of T. W. Thompson against said

county." It was further ordered by the County Court "that J. T. Stark be, and is hereby, appointed collector of said levy, upon his executing bond, with approved security, before the County Court, and he will proceed at once to collect said levy, and pay the same over in satisfaction of the judgments heretofore named in favor of T. W. Thompson or his attorney." Stark declined to accept the office of collector. It is alleged in the bill, and admitted in the answer, "that the sentiments and feelings of a large majority of the citizens and tax-payers of the said Allen County are very hostile and outspoken against the collection or payment of the said tax." The County Court having announced that it was unable to find any person who was willing to accept the appointment of collector and undertake the collection of the levy, and Thompson being unable, as he alleges, to find any person within the county who is willing to qualify as collector, the present suit in equity was commenced against the county, and a large number of its tax-payers, whose names are given in the bill, together with the amount of their taxable property, as assessed by the proper county authorities, with the taxes due from each, as shown by the public records of the county. The bill sets out the foregoing facts, and asks that the several tax-payers, who are made defendants, be required to pay into court the several sums due from them, as shown by the levy made by the County Court, and that other tax-payers, not specifically named as defendants, be required to pay into court, or to some person appointed by it as receiver, the amount due from them respectively—such sums to be applied in satisfaction of Thompson's judgments. There is, also, a prayer for general relief.

The parties, by their counsel, stipulated at the hearing of the cause, and it is to be taken as true, that the County Court "has in good faith and diligently endeavored to find a fit and proper person to act as collector of the railroad taxes in said county, and the special levies of taxes in the bill of complaint set forth ;" that "no such fit and proper person can be found who will undertake and perform the office and duty of such collector ;" and that "the complainant is without remedy for the collection of the debt herein, except through the aid of this

court in the appointment of a receiver, as prayed for in the bill, or other appropriate orders of the court."

Under this state of facts my brethren, affirming the decree below, hold that the Circuit Court, sitting in equity, was entirely without authority, in any way, to cause the tax-payers of Allen County to bring into court the sums due from them, respectively, that the same may be applied in satisfaction of Thompson's judgments.

In my judgment, there is nothing in our former decisions which prevents a court of equity from giving substantial relief to the complainant. In *Walkley* v. *City of Muscatine*, 6 Wall. 482, the application was to a court of equity to compel the *levy* of a tax. The only point decided was, that where a municipal corporation refused to levy a tax to satisfy a judgment against it, the remedy of the creditor was a mandamus to compel such levy; and that " a court of equity is invoked as auxiliary to a court of law in the enforcement of its judgments in cases only where the latter is inadequate to afford the proper remedy." In *Rees* v. *City of Watertown*, 19 Wall. 107, a Federal court, sitting in equity, was asked, in the absence of a levy, to subject the property of the tax-payers of a city to the payment of complainant's judgments against it, and that the marshal of the district be empowered to seize and sell so much of their property as might be necessary for the satisfaction of such judgments. In other words, the court was asked to make a *levy* of taxes. And in *Heine* v. *The Levee Commissioners*, 19 Wall. 655, it appears that holders of bonds issued by the Levee Commissioners—*no judgment at law having been recovered on the bonds, nor any attempt made to collect the amount due by suit in a common-law court*—brought a suit in equity, and prayed that the commissioners be required to assess and collect the tax necessary to pay the bonds and interest, and if, after reasonable time, they failed to do so, that the district judge of the parish, who was by statute authorized to levy the tax when the commissioners failed to do so, be ordered to make the levy. , It was decided that the power of taxation belonged to the legislative, not to the judicial branch of the government ; that, in that case, the

power must be derived from the legislature of the State ; if the body known as Levee Commissioners had, by resignation of their members, ceased to exist, the remedy was in the legislature either to assess the tax by special statute, or to vest the power in some other tribunal ; that, in any event, a Federal court was without power to *levy* and collect a tax authorised by a State law. That such was the extent of the decision in that case is shown in *State Railroad Tax Cases*, 92 U. S. 575, where, referring to *Heine* v. *The Levee Commissioners*, it was said: "The levy of taxes is not a judicial function. Its exercise, by the Constitutions of all the States and by the theory of our English origin, is exclusively legislative." p. 615.

In *Barkley* v. *Levee Commissioners*, 93 U. S. 258, the court was asked to compel, by the process of mandamus, a board of levee commissioners, the members of which had resigned, to assess and collect a tax for the payment of a certain judgment against the parish ; or, if that could not be done, that the police jury of the parish be required to make such assessment and collection ; or, if that could not be done, that the United States marshal should be required to assess at once or by instalments, from year to year, and collect sufficient taxes upon the property subject to taxation for levee purposes to pay the judgment. It was held that a mandamus could not issue, because the Board of Levee Commissioners had become extinct as a body, and that the court had no general power to commission the marshal to levy taxes for the purpose of satisfying a judgment.

These cases only establish the doctrine that the levying of taxes is not a judicial function.

It seems to me that the granting of relief to Thompson will not, in any degree, disturb the principles announced in the foregoing cases. The bill does not ask the court to usurp the function of *levying* taxes. That duty has been performed by the only tribunal authorized to do it, viz., the County Court of Allen County. Nothing remains to be done, except to collect from individuals specific sums of money which they are under legal obligation to pay. The collections of these sums will not interfere with any discretion with which

the Allen County Court is invested by law; for, by its own order, made in conformity with the law of the State, and by the judgment in the mandamus proceedings, the sums due from the individual defendants, and from other tax-payers, has been set apart for the payment of Thompson's judgments. Those sums, when collected, cannot be otherwise used. As the County Court cannot find any one who will accept the office of special collector, and as the parties agree that there is no mode of collecting the sums set apart in the hands of the individual defendants and other tax-payers, for the payment of Thompson, I am unable to perceive why the Circuit Court, sitting in equity, may not cause these sums to be applied in satisfaction of its judgments at law. The plaintiff has no remedy at law; for, the common-law court in rendering judgment has done all that it can do, and the local tribunal, by levying the required tax and seeking the aid of a special collector to collect it, has done all that it can do. There is no suggestion, or even pretence, that the tax-payers who are sued dispute the regularity of the assessment made against them by the County Court. Admitting their legal liability for the specific amounts assessed against them, and conceding that what they owe must, when paid, go in satisfaction of Thompson's judgments, they dispute the authority of any judicial tribunal to compel them to pay it over. With money in their hands, equitably belonging to the judgment creditor, they walk out of the court whose judgments remain unsatisfied, announcing, in effect, that they will hold negotiations only with a "special collector," who has no existence.

That the court below, sitting in equity—after it has given a judgment at law for money, and after a return of *nulla bona* against the debtor—may not lay hold of moneys set apart, *by the act of the debtor*, in the hands of individuals *exclusively for the payment of that judgment*, and which money, the parties agree, cannot be otherwise reached than by being brought into that court, under its orders, is a confession of helplessness on the part of the courts of the United States that I am unwilling to make. I, therefore, dissent from the opinion and judgment in this case.