73 P.2d 333

**STATE ex rel. LYNCH et al. v. DISTRICT COURT OF McKINLEY COUNTY et al.**

No. 4319.

Supreme Court of New Mexico.

Sept. 28, 1937.

Rehearing Denied Nov. 22, 1937.

H. W. Atkins, of Gallup, and W. A. Keleher and Theo E. Jones, both of Albuquerque, for petitioners.

H. C. Denny and H. S. Glascock, both of Gallup, and Gilbert & Hamilton, of Santa Fé, for respondents.

SADLER, Justice.

Relators, as holders of certain bonds issued by Paving District No. 2 of the town of Gallup, invoke the original jurisdiction of this court to restrain by prohibition the district court of McKinley county and the Honorable David Chavez, Jr., as judge thereof, from further proceeding in a certain cause pending before said court wherein a receiver was appointed to take over the duties of the town of Gallup, acting through its mayor and board of trustees, in the collection and distribution of the proceeds of the assignable lien certificates securing said bond issue.

The bond issue in question arose out of a paving program initiated and conducted pursuant to Laws 1903, c. 42 (Code 1915, §§ 3665 to 3671), as amended by Laws 1919, c. 152. The proceedings were had in 1921. The provisional order plan was used, and it resulted in the construction of the paving and assessments against abutting property to pay the cost thereof. Assignable certificates were at first issued to the contractor to meet the cost of the improvement. Then, an agreement was made between town of Gallup and the contractor, incorporated in an ordinance whose preamble recited proceedings theretofore had in connection with the paving program, and had further pertinent provisions as follows:

"Section 1. That all the proceedings heretofore had, taken, done or performed in connection with the street improvements described and ordered by resolution adopted on the 13th day of December 1921 and the 15th day of December A. D. 1921, be and the same hereby are in all respects ratified, approved and confirmed.

"Section 2. That the Town of Gallup be and it is hereby authorized and empowered to receive, collect and enforce the payment. of all the assessments made for the said improvements and all installments thereof and all interest thereon, in the same manner and at the same time or times as the owner or owners of the assignable certificates issued to pay the cost of said improvements might receive, collect or enforce the said payments, and to pay and disburse such payments, the installments thereof and the interest thereon, to any person or persons lawfully entitled thereto.

"Section 3. That the Treasurer of the Town of Gallup be and he is hereby authorized and empowered, and it shall be his duty to receive and collect all assessments levied to pay the costs of said improvements, the installments thereof and the interest thereon, at the times and in the manner heretofore specified, and to pay and disburse such payments to the person or persons lawfully entitled to receive the same

in accordance with the laws of the State of New Mexico and all ordinances and resolutions of said town heretofore or hereinafter to be adopted. All moneys received shall be placed in a separate fund to be designated "Paving Fund" and shall be used for the purpose of paying the principal and interest on the paving bonds hereinafter mentioned, and for no other purpose whatsoever.

"Section 4. That if the owner of any parcel of land assessed for the said improvements shall be delinquent in the payment of any assessment, installment or interest due, it shall be the duty of the town treasurer to notify such owner in writing that such delinquency exists, and that, if the amount due is not paid within 30 days after the date of the said notice, the matter will be referred to the town attorney for collection and foreclosure.

"Section 5. If the payment or payments due as specified in the next preceding section is or are not paid within the stated time, it shall be the duty of the town treasurer to refer the matter to the town attorney, whose immediate duty it shall be to enforce and collect the amount due, together with all costs and penalties, by foreclosure, or in any manner which is now or may be provided by law.

"Section 6. If any property shall be offered for sale for the non-payment of any assessment, installment thereof or interest thereon, and no person or persons shall bid for said property, then the Town of Gallup shall have the power, and it shall be its duty to bid for said property and to take and receive in its corporate name any certificates or deeds to said property, and to sell or dispose of said property for the benefit of the owner or owners of the paving bonds hereinafter specified.

"Section 7. That the Town of Gallup be, and it is hereby authorized and empowered to issue in the name of the town, paving bonds payable on or before eleven years from the date thereof, the principal and interest of which shall be paid solely and exclusively from the revenues derived from the assessments made for the improvements herein specified. The said paving bonds shall bear interest at the rate of seven per centum per annum, payable semi-annually, and shall be in the denomination of five hundred dollars each, and the principal thereof and the interest thereon shall be payable in lawful money of the United States of America, with New York exchange, at the office of the treasurer. Said bonds shall be signed by the mayor of the Town of Gallup, shall be countersigned by the town treasurer, sealed with the seal of the town and attested by the town clerk. The said bonds shall have attached thereto twenty-two coupons evidencing the semi-annual interest thereon, which coupons shall be signed by the facsimile signatures of the town treasurer, and when so executed shall represent the semi-annual interest on the bonds to which they are attached.

"Section 8. The said paving bonds and the coupons to be attached thereto, shall be in substantially, the following form, to-wit: (Here follows the form of bond prescribed.)

"Section 9. That when the said paving bonds are prepared and executed, they shall be exchanged for a like amount of assignable certificates which have been or will be issued to the contractor constructing said improvements, and the said paving bonds and the interest thereon shall be paid and discharged in the manner and at the times specified herein. The assignable certificates received in exchange for said paving bonds shall be retained by the town treasurer for the purpose of endorsing payments thereon; and when said assignable certificates have been paid in full, the proper officers of said town shall discharge and release the liens and liability created by the issuance of said assignable certificates.

"Section 10. The said paving bonds shall be paid and discharged in numerical order, commencing with number One, and when the town treasurer has funds on hand in said Paving Fund sufficient to pay the principal of any of said paving bonds, shall notify the firm of Sidlo, Simons, Fels and Company of Denver, Colorado, by written notice through the United States Mails, postage prepaid, designating the bonds to be paid, and thirty days after said notice is given the interest on said paving bonds shall cease.

"Section 11. All ordinances or resolutions or parts thereof in conflict with the provisions of this ordinance, are hereby repealed. After said paving bonds are issued, this ordinance shall be and remain irrepealable until said bonds and the interest thereon shall be fully paid, satisfied and discharged as herein provided."

A copy of the material provisions of bond No. 139, held by one of the plaintiffs in said receivership suit, is as follows:

"No. 139                                    $500.00

"The Town of Gallup, in the County of McKinley, and State of New Mexico, for value received, hereby promises to pay to the bearer hereof, the sum of Five Hundred Dollars, on the First day of June, A. D. 1933, with interest thereon from date until payment at the rate of Seven Per Centum Per annum, payable semi-annually on the First Days of June and December in each year; both principal and interest being payable in lawful money of the United States of America, with New York exchange, at the Office of the Town Treasurer, upon presentation and surrender of this bond, or of the annexed coupons, as they severally become due.

"The said Town reserves the option to redeem this bond at any time before maturity, by paying therefor its par value and accrued interest.

"This bond is issued in exchange for a like amount of assignable certificates representing the cost of paving and improving certain streets and alleys in said Town, in full conformity with the Constitution and laws of the State of New Mexico and the ordinances and resolutions of said Town duly adopted and approved prior to the issue hereof.

"This bond is payable solely out of a special fund designated the Gallup Paving Fund, containing the receipts derived by the Town from special assessments levied to pay for said improvements. And it is hereby certified and recited that for the payment of this bond the Town of Gallup assumes no obligation whatsoever, except for the creation of said Paving Fund, the collection and enforcement of all special assessments levied to pay for said improvements, the deposit in said fund of all receipts derived from said special assessments, and the payment of this bond out of such receipts in the manner provided by the ordinance under which this bond is issued. And it is further certified and recited that all requirements of law have been fully complied with by the officers of said Town in the issue of this bond and the assignable certificates for which it was exchanged, and that all proceedings and things with reference to making said improvements, to the fixing of the assessment lien against the property improved, and the personal liability against the owner thereof, have been lawfully taken and performed, and that for the payment of this bond and the interest thereon, the Town pledges all of its lawful corporate powers."

The bonds issued were numbered from one to two hundred, inclusive, each in the amount of $500, each having attached 22 interest coupons, evidencing semiannual interest at the rate of 7 per cent. per annum.

The issuance of the bonds to be secured by the lien of the assignable certificates did not at that time have statutory sanction. Later, however, and by Laws 1923, c. 133 (1929 Comp. § 90-1701), statutory authority for issuance of bonds under the plan adopted was granted and bonds theretofore so issued were ratified as valid obligations to the same extent as issued thereunder.

The town of Gallup entered into the performance of its duties under the plan to collect the special assessments and distribute the proceeds thereof to the bondholders. In May, 1937, the outstanding bonds exceeded the amount of the outstanding assessments, and W. Gordon Ward, a bondholder, holding three bonds last in numerical order, instituted in the district court of McKinley county a suit to have a receiver appointed to perform the duties otherwise imposed on the town of Gallup by the provisions of said ordinance. He alleged that he acted for himself and all other bondholders. All of the paving certificates, as well as the bonds, matured in 1933. An accounting was also prayed for, and the said town and its board of trustees were named as defendants. They had answered within four days after filing of the complaint; whereupon judgment was entered appointing a receiver as prayed. Alternative writ of prohibition was granted to stay further proceedings in said cause, and the matter is now before us on the writ and answer.

The grounds advanced in the complaint for appointment of a receiver, briefly, are:

(1) The continued failure, neglect and refusal of the town to collect the liens in the face of insolvency of the trust.

(2) The fact that the town would thereafter continue in such neglect and refusal.

(3) That the town had not fully accounted for and paid over the trust moneys received by it.

After careful consideration of the authorities and argument of the respective parties, we feel constrained to hold that the respondent exceeded his jurisdiction in the appointment of a receiver to take over and administer the assets of said Paving District No. 2 of the town of Gallup. The parties agree, and hence we do not question, that the holders of bonds in said paving district possess all the rights conferred by Laws 1923, c. 133 (1929 Comp. § 90-1701); being the statute authorizing the plan here followed in issuing bonds and ratifying bonds theretofore issued under such a plan. Nor is there disagreement on the proposition that in initiating the paving program, appraising benefits, and levying the assessments against abutting property, the town of Gallup was acting in a governmental capacity. We have held that the power to levy a special or local assessment is essentially a branch of the taxing power. City of Albuquerque v. City Electric Co., 32 N.M. 401, 258 P. 574; City of Roswell v. Batemen, 20 N.M. 77, 146 P. 950, L.R.A.1917D, 365, Ann.Cas.

1918D, 426; City of Roswell v. Levers, 38 N.M. 419, 34 P.(2d) 865. See State ex rel. Ackerman v. City of Carlsbad, 39 N.M. 352, 47 P.(2d) 865 and Gray v. City of Santa Fé (C.C.A. 10th) 89 F.(2d) 406, where similar plans of financing were before the courts.

The authorities hold without a dissenting voice that equity is without power to appoint a receiver to levy and collect taxes. 1 Jones on Bonds and Bond Securities (4th Ed.) § 489; 1 Quindry on Bonds and Bondholders, § 423; Rees v. City of Watertown, 19 Wall. 107, 22 L.Ed. 72; Meriwether v. Garrett, 102 U.S. 472, 515, 26 L.Ed. 197; Thompson v. Allen County, 115 U.S. 550, 6 S.Ct. 140, 144, 29 L.Ed. 472; Yost v. Dallas County, 236 U.S. 50, 35 S.Ct. 235, 59 L.Ed. 460; Depew v. Venice Drainage District, 158 La. 1099, 105 So. 78.

Counsel for respondent, conceding the force of the rule as exemplified by these authorities, insist such authorities are clearly distinguishable from the present case, in that the cases cited represent instances of the appointment of a receiver of a municipal corporation or some other political subdivision with power to perform some essential attribute of government itself, such as exercising the sovereign power of taxation; that in the present case every governmental function imposed on the town or its governing body in connection with said paving program already had been fully performed and that what remains to be done can as well be

performed by a private trustee as the town trustees; that in the collection and distribution of said tax the governing body of said town are in fact and in law nothing more than private trustees, subject to removal for cause as are other private trustees; and, finally, that the paving district itself is without political or legal entity, having geographical limits solely for the purpose of defining the extent of the improvements.

These arguments are persuasive, but we do not fully agree with them. In the first place, though true as respondent contends, the cases cited represent applications for receivers of municipal corporations or other political subdivisions, nevertheless they affirm the rule that a receiver to collect taxes is as improper as one to levy same. In Meriwether v. Garrett, supra, the plaintiff filed suit asking appointment of a receiver to take charge of all the property of the city, collect all delinquent taxes, and distribute the proceeds to the city's creditors. Equity's jurisdiction was denied by the United States Supreme Court. Speaking generally on the subject, Mr. Justice Field, writing for himself and two other justices concurring in the judgment, said: "In the distribution of the powers of government in this country into three departments, the power of taxation falls to the legislative. It belongs to that department to determine what measures shall be taken for the public welfare, and to provide the revenues for the support and due administration of the government throughout the State and in all its subdivisions. *Having the sole power to authorize the tax, it must equally possess the sole power to prescribe the means by which the tax shall be collected, and to designate the officers through whom its will shall be enforced.*" (Italics ours.)

In Thompson v. Allen County, supra, the majority opinion written by Mr. Justice Miller quoted from conclusions of the court as announced by Chief Justice Waite in the Meriwether Case, as follows: "'Whether taxes levied in obedience to contract obligations, or under judicial direction, can be collected through a receiver appointed by a court of chancery, if there be no public officer charged with authority from the legislature to perform that duty, is not decided, as the case does not require it.'"

He then added for the court: "But though the question was not then decided, and it is urged upon us now, we see no more reason to hold that the collection of taxes already assessed is a function of a court of equity than the levy or assessment of such taxes. * * * The appointment of its own officer to collect taxes levied by order of a common-law court is as much without authority as to appoint the same officer to levy and collect the tax. They are parts of the same proceeding, and relate to the same matter. If the common law court can compel the assessment of a tax, it is quite as competent to enforce its collection as a court of chancery. Having jurisdiction to com-

pel the assessment, there is no reason why it should stop short, if any further judicial power exists under the law, and turn the case over to a court of equity. Its sheriff or marshal is as well qualified to collect the tax as a receiver appointed by the court of chancery."

The cases cited and quoted from represent instances where effort was made to have a receiver named with respect to levy or collection of taxes for municipalities or counties. Street Grading District No. 60 of Little Rock v. Hagadorn (C.C.A. 8th) 186 F. 451, 456, certiorari denied 223 U.S. 721, 32 S.Ct. 524, 56 L.Ed. 630 and Road Improvement District No. 7 v. Guardian Savings & Trust Co. (C.C.A. 8th) 298 F. 272, reversed on certiorari 267 U.S. 1, 45 S.Ct. 201, 202, 69 L.Ed. 487, are more closely in point by reason of the fact that the effort at receivership related to improvement districts as in the case at bar. In the Hagadorn Case, the only relief sought by the bill or granted by the decree was the appointment of a receiver to collect the annual installments of an assessment theretofore duly made and pledged by the defendant grading district as security for complainant's bond. After citing and quoting from Rees v. City of Watertown and Thompson v. Allen County, supra, and holding them decisive, the court added: "There is another reason also why complainants cannot invoke the equitable remedy sought in this case. The statutes creating improvement districts in Arkansas (section 5664 et seq., Kirby's Digest) disclose that the Legislature provided a complete scheme not only for their creation, but for raising money to defray the cost and expense of the improvements. Property was to be taxed, and a specific provision was made (section 5686) for the collection of the tax by the city collector upon warrants issued to him by the city clerk commanding him to make the collections according to the assessments as made. This mode of collecting the taxes for the payment of complainants' bonds constituted a part of the contract under and subject to which they were purchased. The enforcement of this provision, namely, enforcement of collection in the mode and through the officers named in the law, is all complainants are entitled to under their contract, and, accordingly, is the only remedy known to the law in case of nonpayment of the bonds."

The holding embraced in the foregoing quotation is peculiarly applicable here. The ordinance under which the bonds were issued prescribed the mode for collecting the assessments designed to meet principal and interest accruing thereon. The statute ratifying the plan adopted, in addition to providing for sale at regular tax sales for delinquency in payments, gave the holder of any bond the right of foreclosure if the governing body of the municipality should fail or refuse to cause any lot to be sold for delinquency in payment of any installment. This twofold remedy was held in Gray v. City of Santa Fe (C.C.A. 10th) 89 F.(2d) 406, 410, to afford a bondholder relief in mandamus against the governing body to compel it to enforce collection.

The court said: "It is the duty of the City under the provisions of section 90-1701 and under its contract to collect such assessments and enforce such liens and it may be compelled by mandamus to perform that duty."

Respondents' counsel seeks to distinguish the Hagadorn Case by pointing out that the "uncollected assessments" there involved, and which the statute authorized the board of improvement to "pledge * * * for the payment of the money borrowed," were of a different character from those represented by assignable certificates; that the assignable certificates evidence a specific lien and are capable of delivery and the transfer of ownership of the lien evidenced. While these differences are adverted to in the opinion in meeting one of the contentions urged upon the court, that is hardly to say that had the lien there involved possessed more nearly the characteristics of this one the court would have felt warranted in justifying receivership. The matter quoted from that opinion, supra, is conclusive that it would not.

The question was again before the federal courts in Road Improvement District v. Guardian Savings & Trust Co., supra. The court here dealt with an act of the Arkansas Legislature authorizing the creation of road improvement districts with provision for assessing the cost of the road in the form of special benefit assessments upon lands in the district. The uncollected assessments became the security for a bond issue under a so-called mortgage, and suit was brought to obtain appointment of a receiver to collect the assessments to pay past-due bonds and interest coupons. Here, the statute creating the district provided for the appointment of a receiver by the state chancery court in case of default. The trial court appointed the receiver. The Circuit Court of Appeals, under the view that the remedial right to proceed in a federal court could not be enlarged or diminished by a state statute, set aside the appointment. On certiorari, the United States Supreme Court held the Circuit Court of Appeals erred in concluding that the chancery power was confined to the state court named in the statute, and, inasmuch as the statute itself authorized appointment of a receiver, the court's jurisdiction to appoint one was not lacking. Among other things, the court said: "The ground on which jurisdiction was denied by the Circuit Court of Appeals was that the power to levy and collect taxes was a legislative function of the state which could not be usurped by a federal court. But while that may be true as a general doctrine it cannot apply when a state has authorized and confirmed an assessment and a mortgage of it as security for bonds that the public is invited to buy, *and has provided in terms for a collection by a receiver appointed in equity if there should be a default.* There is no longer any legislative act to be done, and there is no usurpation of powers in following the course provided by state law. It seems to be recognized in Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197, that a receiver might be appointed by a Court

of Chancery when that remedy was contemplated by the contract, as it fairly may be said to have been contemplated here. The subject-matter of the mortgage and the possible foreclosure of the lien require the intervention of such a court if right is to be done. In the argument before us there was some suggestion that the chancery power was confined to the state court named in the statute. But the decisions have done away with such a limitation and it was not relied upon by the Circuit Court of Appeals." (Italics ours.)

Unquestionably, it seems to us, but for the statutory authorization for appointment of a receiver, the Supreme Court, in line with its previous decisions cited and relied on in the opinion of the Circuit Court of Appeals, would have held equity without jurisdiction to make the appointment. Absent statutory authorization, the rule seems to be that equity is without jurisdiction to appoint a receiver under circumstances such as those here shown. 1 Quindry, Bonds and Bondholders, § 423. Despite the distinctions sought to be drawn between the cases so affirming and the facts of the present case, we have been unable to find a single precedent sustaining jurisdiction to appoint in the circumstances here shown. Supervisors of Lee County v. Rogers, 7 Wall. 175, 177, 19 L. Ed. 162, the authority most relied upon by respondent, discloses express statutory authority for designation of the United States Marshal to levy and collect taxes which the supervisors under writ of mandamus had failed to do. The statute read: "The court may, upon application of the plaintiff (besides or instead of proceeding against the defendant by attachment) direct that the act required to be done may be done by the plaintiff, *or some other person appointed by the court,* at the expense of the defendant."

It was solely by virtue of this express statutory authorization that the court sustained the marshal's appointment.

Equity is as much wanting in jurisdiction to appoint a receiver to perform the duties of the governing body in collecting the tax as to assess the same. Thompson v. Allen, supra; Preston v. Sturgis Mill Co. (C.C.A. 6th) 183 F. 1, 3, 32 L.R.A.(N. S.) 1020. The controlling ordinance and statute having provided a complete scheme for initiating the paving program and for raising the money to defray the cost thereof, the mode of enforcement therein prescribed affords the only remedy. Street Grading District v. Hagadorn and Rees v. Watertown, supra. It is a remedy which may be enforced in mandamus. Gray v. City of Santa Fé, supra.

"The scope of the principle is that each step in the process of taxation from beginning to end can be taken only as the Legislature may prescribe. * * * It is not, however, within the scope of this principle that the judiciary shall in no event exercise this power of taxation. Its scope is that it shall not exercise it *unless the Legislature shall so provide.* If the Legislature does so provide, *it may exercise it*

*to the extent provided."* Preston v. Sturgis Milling Co., supra (Italics ours.)

We recently have held that an agreement by the city to become primarily liable on the bonds would violate section 12 of article 9 of the State Constitution, and would be invalid. City of Santa Fe v. First National Bank, 41 N.M. 130, 65 P. (2d) 857.

While it is true under the statute that upon failure or refusal of the governing body to sell property for default in the payment of an assessment the holder of any bond may sue to enforce the lien, this does not detract from the governmental nature of the duty performed by the governing body when it moves to collect. It is a receiver to perform the duty of the town as trustee, not to exercise the privilege conferred by the statute on a bondholder, that is sought by plaintiff in the suit below.

Another consideration emphasizes the correctness of our conclusion. The governing body conceivably may yet have a governmental function to perform in the matter of an assessment. In City of Clovis v. Scheurich, 34 N.M. 227, 279 P. 876, 877, we sustained action of the trial court in setting aside an assessment under this statute as confiscatory. We there observed that: "No statute limits the attack upon the validity of the assessment." The limitation involved in Oliver v. Town of Alamogordo, 35 N.M. 477, 1 P.(2d) 116, had not then been enacted. If, by reason of the setting aside of an assessment for invalidity, the occasion for reassessment should arise, the receiver acting as substitute trustee for the town would be wholly without authority to act in the premises, if reassessment be available, as seems likely. No good reason suggests that the district court would have any more jurisdiction to assess in case of a special tax such as this, where power to do so is not expressly granted, than in the case of general taxes. We have held it without such jurisdiction in the case of general taxes. In re Blatt, 41 N.M. 269, 67 P.(2d) 293, 110 A.L.R. 656. There being no one with authority to reassess, the property would escape the tax, though enjoying the benefit.

It is also urged upon us that prohibition should be denied because there is an adequate remedy by appeal; citing Board of County Commissioners of Guadalupe County v. District Court of Fourth Judicial District, 29 N.M. 244, 260, 223 P. 516. But, considering the fact that all acts of the receiver would be absolutely void, the expense to be incurred incident to receivership, the complications arising from unauthorized sales by him in an effort to enforce collection of the assessments, the inadequacy of the remedy by appeal at once suggests itself. If appeal afford an inadequate remedy, prohibition, otherwise proper, will not be denied by reason of the remedy by appeal. Crist v. Abbott, 22 N. M. 417, 163 P. 1085; Hammond v. District Court of Eighth Judicial District, 30 N. M. 130, 228 P. 758, 39 A.L.R. 1490.

It follows from the conclusions announced that the district court exceeded

its jurisdiction in appointing a receiver. The writ, so far as it relates to further proceeding with the receivership, will be made permanent. There can be no question of the court's jurisdiction to entertain the suit for purposes of an accounting; relief prayed in the complaint. In so far as the alternative writ operates as a restraint on further proceeding with the suit as one for an accounting, it will be dissolved.

It is so ordered.

HUDSPETH, C. J., and BICKLEY, and BRICE, JJ., concur.

FRENGER, District Judge, did not participate.