## PURCELL v. CITY OF CARLSBAD.
### No. 2404.

Circuit Court of Appeals, Tenth Circuit.
March 14, 1942.

Pearce C. Rodey, of Albuquerque, N. M. (Don L. Dickason and William A. Sloan, both of Albuquerque, N. M., on the brief), for appellant.

G. L. Reese, Jr., of Carlsbad, N. M. (James W. Stagner and C. R. Anderson, both of Carlsbad, N. M., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

By appropriate resolutions and ordinance, as authorized and outlined in Sections 90-2301 to 90-2307, NMSA 1929, the City of Carlsbad, New Mexico, appellee herein, created Sanitary Sewer District No. 1 and provided for the construction of a sewage system within the said district. To finance the construction of the improvements authorized by the resolutions, the city by ordinance provided for assessments against the abutting property included within the district, as authorized by Section 90-2302, in the total sum of $20,611.98. Simultaneously it issued sewer certificates against the assessments in the sum of $18,-000, represented by thirty-six certificates in denominations of $500 each, payable in ten equal installments beginning on January 1, 1927, with 6% interest, payable semi-annually on the unpaid balance from the date of the issuance on January 1, 1926.

The appellant, as a nonresident owner and holder of twenty-seven of the special assessment sewer certificates, on which there was a balance due and payable of $12,166.47, commenced this suit against the city to recover a judgment for the unpaid balance with 6% interest from September 12, 1940. The action is based upon the failure of the city to comply with its implied obligation to make the assessments and to enforce collection of the same.

The appellant alleged diversity of citizenship, requisite amount in controversy, the creation of the improvement district, the provisions for the assessments, and the issuance by the city of special assessment sewer certificates in accordance with the statutory scheme provided in Sections 90-2301 to 90-2307; the date of the issuance of the same, the manner of their payment, and further alleged that "the certificates were in prescribed form containing a binding recital that all things had been done which were necessary to their validity"; that by the terms of said statutory ordinances and certificates, the defendant city was to collect and enforce payment of the assessments, to segregate funds collected, and to apply said funds in payment of the certificates in consecutive order as rapidly as reasonably possible. The petition further alleged that the defendant city had violated its trust and contractual duty to the plaintiff by neglecting to levy enforceable as-

sessments in the sewer district and to enforce with reasonable diligence such assessments until after the statute of limitations had run on actions to enforce the same; that by reason of such negligence and wilful mismanagement, and by breach of its duty to the plaintiff, the defendant has produced a hopeless insolvency in the fund out of which the plaintiff's certificates are payable, and that therefore the plaintiff is entitled to judgment for the unpaid balance on the certificates with interest at 6% from September 12, 1940 and for its costs.

On motion of the defendant, the action was dismissed on the grounds that the complaint failed to state a claim against defendant on which relief could be granted, and the appellant has appealed. The question presented here is whether the complaint states a cause of action against the City of Carlsbad.

Since the improvement district was created, the assessments made, and the certificates issued to be paid in accordance with Sections 90-2301 to 90-2307, the rights, powers and duties incident thereto are governed and measured by the provisions of these statutes, and we must look to them for the solution of the problem presented in so far as the statutes are applicable.

Sections 90-2301, 90-2302, NMSA 1929, authorize the creation of the sewer districts, the apportionment of the cost thereof against the land abutting the sewer or sewers in accordance with the front footage of the land so abutting, subject to the right of review accorded affected property owners in a judicial proceedings authorized by Section 2303. Section 90-2304 provides that the city council or board of trustees shall direct the clerk of the municipality to deliver a certified copy of the assessment against the property to the county assessor, or other proper officer directed by law to assess property for municipal purposes; and the said assessor or other officer shall enter said assessments in the assessment books with appropriate identification. The statute further provides that after entry in the assessment books, the said assessments shall become liens on the lots and pieces of lands on which assessments have been made, and the full amount of said assessments shall be enforced and collected in the manner provided by law for the collection of taxes against real estate.

Section 90-2305 provides that the said assessments shall be payable in ten annual installments, the first payment to be made at the time general taxes of the said municipality are next due, and thereafter semiannually in accordance with general taxes. The same section provides for interest not to exceed 6% per annum, and authorizes the council or board of trustees to issue corresponding certificates to be designated "sewer certificates," payable in equal annual installments from and after the date of the issuance thereof. The same section further provides: "They shall be payable from money received from the assessments above provided for, and any deficiency in the fund to pay said certificates shall be paid from the general revenues of said municipality, and said certificates may be redeemed at the option of the municipality issuing them at any time before maturity."

It is thus apparent that the statute under which the sewer certificates were issued authorized corresponding assessments against the property embraced within the improvement district and benefited thereby, which assessments were constituted a lien against the property to insure the payment of the certificates. But the enabling statutes, and the ordinances enacted in pursuance thereof "are the measure of the bondholders' rights, and likewise limit the property-owners' burden. Authority for imposing the burden of special improvement assessments must be found within the four corners of the legislative acts and the authorized ordinances upon the subject, or within the contract itself which must be clearly authorized at least inferentially, by the statute." Munro v. City of Albuquerque, 43 N.M. 334, 93 P.2d 993, 997. It follows also that "the city's only obligation is to handle this fund according to the contract" and its liability under the contract is measured by the statutes which authorized it. State v. City of Carlsbad, 39 N.M. 352, 47 P.2d 865, 868. This limitation upon its powers does not however prevent a municipality from constituting itself as trustee or agent of the bondholders or certificate holders for the purpose of making assessments and the enforcement and collection thereof when authorized by statute, subject to the constitutional and statutory limitations upon the exercise of this power. Hodges v. City of Roswell, 31 N.M. 384, 247 P. 310, 314; City of Sante Fe v. First National Bank in Raton, 41 N.M. 130, 65 P.2d 857.

In Gray v. City of Santa Fe, 10 Cir., 89 F.2d 406 (see also the same case decided November 26, 1941, now pending on petition for rehearing), this court held that in the precise circumstances there shown a municipality in New Mexico might be liable for a breach of its statutory duty or contract to enforce the collection of assessments by foreclosure and sale of the property against which there were delinquent assessments. But in these cases, and the authorities which support it, see Powell v. City of Ada, 10 Cir., 61 F.2d 283; City of New Orleans v. Warner, 175 U.S. 120, 20 S.Ct. 44, 44 L.Ed. 96; Peake v. City of New Orleans, 139 U.S. 342, 11 S.Ct. 541, 35 L.Ed. 131, it is made abundantly clear that any liability of the municipality in connection with the breach of its express duty is contingent upon and subject first to the corresponding duty of the bondholder or certificate holder to exhaust all remedies available to him; (1) to mandamus the municipality to perform its express or statutory duty, and (2) to enforce in its own name and right the collection of the assessments by foreclosure proceedings when so authorized.

It must be remembered that municipalities are creatures of the laws of the state of which they are a part, and their powers are derived solely therefrom. 25 R. C.L. 28. It follows that the general liability of any municipality for its breach of trust or contract is limited to the precise circumstances under which it is authorized, and in no event shall such liability be extended beyond the limits of its constitutional power to incur. Gray v. City of Santa Fe, supra; Seward v. Bowers, 37 N. M. 385, 24 P.2d 253. It must also be remembered that in providing for public improvements, and for the levying of taxes and assessments in payment thereof, the municipality acts in a governmental capacity and its acts are governed and measured by the powers conferred upon it in virtue of its governmental capacities. Moore v. City of Nampa, 9 Cir., 18 F.2d 860, affirmed by the Supreme Court 276 U.S. 536, 48 S. Ct. 340, 72 L.Ed. 668; State v. District Court of McKinley County, 41 N.M. 658, 73 P.2d 333, 340, 113 A.L.R. 746.

It is affirmatively shown from the complaint that the certificates were in prescribed form and that all things had been done necessary to their validity. It therefore must be presumed that the city did certify to the county assessor the assessments, as by statute required, to be enforced and collected in the manner prescribed by law for the collection of taxes against real estate.

There is nothing contained in the enabling statute, Sections 90-2301 to 90-2307, the ordinance, or certificates, which impose a duty on the city to do more than to create the district, provide for the assessments, issue the certificates, and file the assessments with the county assessor, whose duty it is to enforce collection in the manner provided by law for the collection of taxes against real estate. After collection of the assessments, it is the duty of the municipality to pay the interest and principal on the bonds as they mature out of the special fund provided by the assessments. By the applicable statutes and the certificates, the city is made guaranty for any deficiency in the fund, said deficiency to be paid from the general revenues of the city, but admittedly such an obligation is not within the constitutional power of the city to incur without a vote of the qualified electors as required by Section 12, Article 9 of the Constitution of New Mexico. Gray v. City of Santa Fe, supra; City of Santa Fe v. First National Bank in Raton, supra; State v. District Court of McKinley County, supra. There is no express statutory or contractual duty imposed upon the city to enforce collections, nor is any method provided therefor in the statutory scheme. The only means or method suggested by the appellant for the enforcement of the assessments, other than the manner provided by law for collection of taxes on real estate, are Sections 82-301 to 82-305, NMSA 1929, which provide that municipalities may file liens "including sewer assessments" with the county clerk; that the municipality or the holder of any assessment certificates may foreclose by suit the liens against delinquent assessments, and that such remedy is additional and complimentary to any other remedy available for the enforcement of assessment liens.

Clearly there was no express duty imposed on the City of Carlsbad to file the assessment liens with the county clerk as authorized by statute. But if there was, the law imposes a corresponding duty on the certificate holder to compel the city to perform its statutory duty as a requisite to the maintenance of a suit for damages.

Conceding, without deciding, that the City of Carlsbad was authorized by Section 82-303 to foreclose the liens against the delinquent assessments, the same right and duty was imposed upon the certificate holder and it was his duty to timely act under the provisions of the statute, and to either mandamus the city to perform its contractual or statutory duty, or to institute foreclosure proceedings in his own name. Gray v. City of Santa Fe, supra. We do not understand that the appellant contends that the City of Carlsbad was under any express, statutory, or contractual obligation to enforce the collection of assessments by suit to foreclose, or to take any other steps to enforce the assessment liens. But the appellant does contend in substance that since by express statute and by contract the city promised to pay any deficiency in the fund from its general revenue, liability on which promise is unenforceable because ultra vires, there arises by operation of law an implied general liability for the deficiency. By this process of reasoning it is sought to convert obligations of certain property owners included within a special improvement district into general obligations of the city, to be paid from the general revenues of the city in violation of its plain constitutional limitations.

Appellant relies upon City of New Orleans v. Warner, supra; Bessemer Investment Co. v. City of Chester, 3 Cir., 113 F. 2d 571; Jewell v. City of Superior, 7 Cir., 135 F. 19; Vickrey v. City of Sioux City, C.C., 104 F. 164; City of Catlettsburg v. Trapp, 261 Ky. 347, 87 S.W.2d 621. See also Powell v. City of Ada, supra; Bates County v. Wills, 8 Cir., 239 F. 785; City of McLaughlin v. Turgeon, 8 Cir., 75 F.2d 402; Gray v. Town of Thermopolis, D.C., 33 F.Supp. 73; City of El Paso v. West, 5 Cir., 102 F.2d 927. In all of these cases, wherein the city was held generally liable upon its special obligations, it plainly appears that liability was based upon the violation of an express contract as commanded by statute, to provide a special fund for the payment of the obligations when due, and the city was expressly authorized and commanded to take the necessary steps to enforce the assessments. Furthermore, it does not appear in any of the cases that there was any constitutional limitation upon the city to incur the obligation or to retire the same from its general revenues. The clear weight of authority negatives the right of recovery when a remedy in the nature of mandamus or suit to foreclose is open to the bondholder. See Peake v. City of New Orleans, supra; Powell v. City of Ada, supra. The rationale of these cases is consistent with this court's analysis of the underlying principles applicable to this class of cases in Gray v. City of Santa Fe, supra. No case is called to our attention, and we have found none, which supports the theory of the appellant. If there is an implied obligation to pay the deficiency in the assessments out of the general revenues of the City of Carlsbad, it must rest upon a legal rather than a moral obligation; the legal obligation to pay must be found within the power of the city as delegated by statute within constitutional limits, and it is absent here.

A consideration of the statutes, the ordinance under which the obligations were created, and the decisions of the courts of New Mexico and other authorities defining the powers and duties of municipalities, leads us irresistibly to the conclusion that the City of Carlsbad cannot be held liable for the breach of a duty not within the command of the statutory scheme under which the assessments were made and the certificates issued, or upon an implied obligation growing out of the failure of an express obligation unauthorized by the Constitution of the State of New Mexico.

We conclude that the trial court correctly sustained the motion to dismiss and the judgment is affirmed.